**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**
**No.**

| | |
|---|---|
| CHRISTOPHER M. WELLS AND LESLIE M. WELLS ON BEHALF OF THEIR SON, MATTHEW WELLS,<br><br>Plaintiff,<br><br>v.<br><br>THE MOORE COUNTY SCHOOLS BOARD OF EDUCATION AND JEFFREY LEE LYNCH,<br><br>Defendants. | **COMPLAINT** |

Christopher M. Wells and Leslie M. Wells, on behalf of their son, Matthew Wells, ("Matthew" or "Plaintiff"), complaining of defendants, the Moore County Schools Board of Education ("Moore County Schools") and Jeffrey Lee Lynch ("Lynch" and collectively with Moore County Schools, "Defendants"), hereby file this Complaint ("Complaint") and allege and say as follows:

**PRELIMINARY STATEMENT**

1.      This case involves the assault of a minor child, Matthew—who is non-verbal and autistic—by an untrained and unqualified teaching assistant ("TA") at Pinecrest High School in Southern Pines, North Carolina ("Pinecrest") on September 16, 2021.

2.      As set forth in more detail below, Moore County Schools hired Lynch to help teach and care for Matthew in a Pinecrest classroom, where Matthew was a student.

3.      Moore County Schools hired Lynch even though he had no teaching certifications, training, or experience, including related to teaching individuals with intellectual

and developmental disabilities. Moore County Schools failed to offer any training or guidance to Lynch prior to his commencement as Matthew's TA, which presented a foreseeable risk of harm to Matthew.

4. Within mere hours of commencing work as Matthew's TA, Lynch assaulted Matthew numerous times in Matthew's Pinecrest classroom. Specifically, Lynch hit Matthew in the face and neck, causing Matthew to fall to the ground in pain; grabbed Matthew by his arm and aggressively forced him from one area of the classroom to another; and overturned a classroom chair and thrust the metal chair legs at Matthew as if Matthew was an animal to be tamed.

5. Following Lynch's strike of Matthew on his face and neck, Pinecrest's police officers—the school's private police force—were called to intervene against Lynch and protect Matthew. As Lynch exited the classroom during this intervention, he yelled at Matthew—and to whomever else could hear—that he could "not do this anymore" and that Matthew "belonged in an institution."

6. Moore County Schools was given multiple opportunities to prevent Lynch's assaults on Matthew prior to and on September 16, 2021, but completely disregarded those opportunities and failed to act.

7. Upon learning in mid-September 2021 that Moore County Schools had assigned him to be Matthew's TA, Lynch communicated multiple times to Pinecrest's administration that Lynch was unqualified to teach Matthew and that Lynch should be assigned to another classroom. Moore County Schools continually disregarded Lynch's statements of concern.

8. Throughout the course of his first and only day teaching Matthew, Lynch repeatedly conveyed to school administration that he wanted to be removed from Matthew's

classroom. Specifically, Lynch left the classroom while working with Matthew on September 16, 2021 to speak with school administration to request removal and reassignment. However, the Pinecrest administration disregarded Lynch's requests and sent Lynch back into the classroom, knowing of Lynch's concerns and that he was not qualified to teach Matthew.

9. Moore County Schools' disregard of the clear warnings that Lynch was unfit to teach Matthew placed Matthew in immediate physical and emotional danger. This danger culminated in Lynch's multiple assaults on Matthew.

10. In the days after the assault, Matthew became uncharacteristically withdrawn around his family. Because he is non-verbal and has other intellectual and developmental disabilities that limit his ability to communicate, Matthew was unable to convey to others—including his parents, Christopher M. Wells and Leslie M. Wells (the "Wells family")—that Lynch physically and verbally assaulted him on September 16, 2021.

11. Moore County Schools sought to capitalize on Matthew's disabilities and inability to communicate about Lynch's assault by actively seeking to conceal it. Specifically, Moore County Schools failed to tell Matthew's parents about the assault on September 16, 2021 and in the following days.

12. The Wells family only finally learned that there was an assault several weeks later when Captain Rodney Hardy with the Moore County School Police Department called the Wells family and asked if they wanted to press charges against Lynch for the assault of Matthew. Officer Hardy refused to provide any details regarding the assault.

13. Accordingly, later that same day, the Wells family contacted Matthew's classroom teacher, Sierra Cobb, who was also hesitant to provide the Wells family with any

details of the assault. Cobb stated that she was "not supposed to" tell the Wells family about the assault, but she did finally inform the Wells family that Lynch struck Matthew in the head.

14.     Simply stated, Moore County Schools' conduct violated the sacred trust that all parents and guardians place in public school systems to protect their children from harm while those children are in their care.

15.     The egregiousness of Moore County Schools' violation of this trust is deepened in this case because of Moore County Schools' abject failure to protect one of its most vulnerable students from foreseeable harm, as well as Moore County Schools' attempts to use Matthew's inability to effectively communicate with others as a means of concealing Lynch's conduct and Moore County Schools' related failures.

16.     For these reasons and those set forth below, Moore County Schools is liable to Matthew for its conduct and the harm Matthew experienced, and it must be held accountable.

17.     Lynch is also individually liable to Matthew for his own egregious conduct and the harm he caused to Matthew, and he too must be held accountable.

## PARTIES, JURISDICTION, AND VENUE

18.     Matthew resides in Moore County, North Carolina with the Wells family.

19.     The Wells family acts on Matthew's behalf.

20.     During the period at issue, Matthew was a seventeen (17) year-old student at Pinecrest in Southern Pines, North Carolina.

21.     Matthew is energetic young man who enjoys spending time with his family, exercising, listening to music, and playing with his dog, Oscar. Few things make Matthew as happy as helping his family around the house, particularly if that means he gets to use power tools of any variety.

22.     Matthew, during the period at issue, was a qualified individual with a disability within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA").

23.     Matthew participated in Pinecrest's Extended Content Standard Course of study, which is the most restrictive program offered by Moore County Schools.

24.     Matthew had an Individual Education Program ("IEP") at Pinecrest.

25.     Pinecrest is overseen and administered by Moore County Schools.

26.     Moore County Schools is a North Carolina governmental entity with its principal office located in Moore County, North Carolina.

27.     Moore County Schools is a governmental agency to whom the State has delegated its duties to educate its students.

28.     As a public school board, Moore County Schools is considered a municipality under North Carolina law.

29.     Moore County Schools was, at all times relevant to this Complaint, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs, and usages of the State of North Carolina and/or Moore County.

30.     Moore County Schools was established pursuant to N.C. Gen. Stat. § 115C-35.

31.     Moore County Schools has the capacity to sue and be sued pursuant to N.C. Gen. Stat. § 115C-40.

32.     N.C. Gen. Stat. § 115C-36 confers and imposes upon Moore County Schools all powers and duties which are not expressly conferred and imposed upon some other official and grants Moore County Schools "general control and supervision of all matters pertaining to the public schools" in its administrative unit, which encompasses and includes Pinecrest, and

requires Moore County Schools to "enforce the school law" in its respective unit, which encompasses and includes Pinecrest.

33.      N.C. Gen. Stat. § 115C-47 imposes upon Moore County Schools the duty to "provide students with the opportunity to receive a sound basic education and to make all policy decisions with that objective in mind, including employment decisions, budget development, and other administrative actions, within their respective local school administrative units, as directed by law."

34.      Moore County Schools, as explained in detail below, has violated the ADA by failing to provide a safe, therapeutic place for Matthew to receive educational services and by failing and refusing to make reasonable accommodations necessary for Matthew to access Moore County Schools' programs and services.

35.      Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331, as this action arises under the ADA.

36.      Moore County Schools caused tortious injury to Matthew in Moore County, North Carolina by negligently failing to supervise an employee of Moore County Schools, negligently hiring an employee of Moore County Schools, and negligently retaining an employee of Moore County Schools.

37.      Upon information and belief, and to the extent necessary for maintenance of this suit, Moore County Schools has waived its governmental immunity by securing liability insurance for damages caused by the negligence or tortious actions of its employees and agents.

38.      Matthew's North Carolina State constitutional claims are made pursuant to Article I, Section 15 of the North Carolina State Constitution.

39.     Moore County Schools violated the constitutional rights of Matthew guaranteed him under Article I, § 15 of the Constitution of North Carolina.

40.     Jurisdiction over Matthew's North Carolina common law and constitutional claims herein is conferred on this Court pursuant to 28 U.S.C. § 1367 where Matthew's North Carolina common law and constitutional claims are so related to Matthew's claim pursuant to the ADA as to be part of the same case or controversy under Article III of the United States Constitution.

41.     Upon information and belief, Lynch resides in Moore County, North Carolina and is a citizen of the state of North Carolina.

42.     Upon information and belief, venue is proper in this Court pursuant to 28 U.S.C. § 1391.

43.     Upon information and belief, this action is timely commenced within all applicable statutes of limitation and statutes of repose, if any, and all pre-requisites to commencing this action, if any, have been met.

44.     The amount in controversy in this action shall be proven at trial.

## FACTUAL BACKGROUND

45.     Matthew incorporates and alleges all allegations set forth in this Complaint as if set forth fully herein.

### *Matthew's Background and Education at Pinecrest.*

46.     Matthew has been diagnosed with, among other things, Level Three Autism Spectrum Disorder, a profound intellectual development disorder. Matthew has also been diagnosed with attention-deficit/hyperactivity disorder, as well as obsessive compulsive behavior.

47.     Matthew is a "person with disabilities" as defined by North Carolina law.

48.     Matthew is a qualified individual with a disability under the ADA because his autism is a physical or mental impairment that substantially limits one or more major life activities.

49.     One manifestation of Matthew's disabilities is that he is non-verbal, meaning he cannot communicate with words.

50.     Matthew was a student at Pinecrest at all times during the period at issue.

51.     Matthew is no longer an enrolled student at Pinecrest as of the filing of this Complaint.

52.     In September 2021, Matthew had an implemented IEP at Pinecrest pursuant to applicable law.

53.     The primary purpose of Matthew's IEP is to permit Matthew to access Moore County Schools' benefits and services by providing him with a safe and therapeutic environment free from the threat of physical harm or restraint.  Such an environment allows Matthew to learn in manner that accommodates his disability.

54.     Matthew's IEP placed him in a group setting with a specifically assigned one-on-one TA to oversee Matthew's learning and implement Matthew's IEP.  One of the roles of the classroom teacher is to oversee the TA.

55.     On numerous occasions prior to September 16, 2021, Moore County Schools failed to implement Matthews IEP and failed to provide him with a safe, therapeutic environment free from the threat of physical restraint or harm in which to learn.

56.     On September 16, 2021, based on assignments made by Pinecrest, Cobb served as Matthew's classroom teacher and Lynch served as Matthew's TA.

57.     On September 16, 2021, Matthew was alone in the classroom with Sierra Cobb and Lynch.

58.     Before September 16, 2021, Matthew was sometimes isolated in his own classroom with his teacher and a TA, but would frequently join other students in a group setting for his learning.

59.     After the incident on September 16, 2021, Matthew was almost always isolated from his peers and forced to spend the vast majority of his time alone with only his teacher and a TA.

### *Lynch's Lack of Qualifications to Teach Matthew and Moore County School's Negligent Hiring, Training, and Retention of Lynch.*

60.     Upon information and belief, Lynch was initially hired as a TA by Moore County Schools in 2021 as a result of his attendance at a job fair where he met with a representative of Moore County Schools.

61.     Moore County Schools hired Lynch as a TA despite the fact that he had no secondary education teaching experience and lacked any relevant training, education, or certifications in teaching at any level.  Moreover, Lynch lacked any training, education, or certifications related to teaching or engaging with students with intellectual and developmental disabilities.

62.     The specific training and certifications that Lynch lacked—and that Moore County Schools failed to provide to him in advance of his assignment as Matthew's TA—also included, but were not limited to, training and certification in crisis prevention intervention ("CPI").  CPI is a form of non-violent crisis intervention used across the United States in educational environments to help teachers and TAs manage challenging and disruptive situations involving students, particularly those with autism.  CPI is designed to help teachers and TAs

- 9 -

deescalate moments of crisis with students through the use of non-violent techniques and to keep students safe. Teachers, TAs, and other staff can become CPI certified after training by a CPI-certified instructor.

63.     Virtually every teacher, TA, or staff member that works with students with autism on a regular basis has training in CPI. In other words, it is considered standard for teachers, TAs, and staff members to have such training when they work with students with disabilities similar to Matthew's.

64.     In addition to its general failures to train Lynch to work with students with intellectual and developmental disabilities, Moore County Schools failed to provide Lynch with CPI training.

65.     Upon information and belief, prior to seeking a TA position with Moore County Schools, Lynch worked for over twenty (20) years as a civilian internal review auditor with the United States Army.

66.     Lynch commenced his employment as a TA at Pinecrest at or near the start of the 2021 school year.

67.     Upon information and belief, on or around September 9, 2021, Lynch was informed by Moore County Schools that he would be assigned as Matthew's TA and he received background on Matthew's intellectual and developmental disabilities.

68.     Upon information and belief, on or around September 10, 2021, Lynch informed the director of Pinecrest's program for students with intellectual and developmental disabilities ("Exceptional Children's Program"), Jane Cummings, and another teacher in the Program, Barbara Rich, that he lacked the background, training, and understanding required to serve as Matthew's TA.

69. Pinecrest's administration was well aware of Lynch's concerns and his lack of training and experience. However, Moore County Schools assigned Lynch as Matthew's TA anyway.

70. Lynch was unable to begin work with Matthew until September 16, 2021 due to COVID-19-related quarantines related to Matthew's classroom from September 13, 2021 through September 15, 2021.

*Lynch's September 16, 2021 Assault and Battery of Matthew.*

71. Lynch reported to Matthew's classroom at the commencement of the school day on the morning of September 16, 2021. At the time of his commencement as Matthew's TA, Lynch lacked the training, education, or certifications necessary to work with a severely autistic and non-verbal student such as Matthew.

72. Matthew's teacher, Cobb, showed Lynch Matthew's classroom, including certain padded and calming areas used for Matthew's classroom instruction. Cobb informed Lynch that Matthew's autism can manifest itself, at times, in aggressive behavior, including physical manifestations.

73. Upon information and belief, Lynch became almost immediately upset upon meeting Matthew and commencing his work with him. Specifically, Lynch expressed multiple times to Cobb after meeting Matthew that he was uncomfortable and did not know how to approach or work with Matthew.

74. Over the course of the morning of September 16, Lynch's lack of knowledge of how to interact with and teach Matthew caused Matthew to become agitated. For example, because of an alleged back injury, Lynch insisted that he sit in a chair when working with Matthew, who was seated on the classroom floor. Upon information and belief, Lynch's posture

- 11 -

of being seated over Matthew caused Matthew to feel threatened and to become agitated and physically aggressive.

75.     As a result of not knowing how to approach Matthew due to a lack of training and experience, at one point during the morning of September 16, 2021, Lynch grabbed Matthew by the arm and physically dragged him to the padded area of the classroom.  Using physical force with an autistic student in the classroom setting is always inappropriate, against Moore County Schools' own policies, and contrary to CPI standards.

76.     Lynch's use of physical force on Matthew frightened him.  This use of physical force on Matthew also was clearly contrary to the standard practice of deescalating aggressive situations commonly used by those trained in working with autistic students and contrary to Moore County Schools' own policies.

77.     Matthew lacks the ability to advocate for himself or defend himself verbally, and so Matthew responded physically to Lynch's assault, and began throwing items in the classroom.

78.     Instead of appropriately de-escalating the situation, Lunch announced to Cobb that he "couldn't handle" working with Matthew.

79.     Upon information and belief, Cobb responded by calling Cummings, Director of Pinecrest's Exceptional Children Program, and telling her that Lynch felt as though he could not work with Matthew.  Cummings instructed Cobb to have Lynch come to speak to her in her classroom.  Lynch then went to speak with Cummings.

80.     Upon information and belief, Lynch told Cummings that he was not adequately trained and did not want to continue working with Matthew.  However, Cummings sent Lynch back to work with Matthew, despite Lynch's statements.

81.    When he returned to work with Matthew at Cummings's direction, Lynch found the classroom to be in disarray.  Matthew had broken a light and had thrown various classroom items across the classroom floor.  Present in the classroom upon Lynch's return were Cobb, Pinecrest principal, Stefanie Phillips ("Phillips"), and Matthew.  Upon information and belief, Lynch informed Phillips that he no longer wished to work with Matthew.  However, upon information and belief, Phillips disregarded his request and instructed Lynch to finish the day working with Matthew.

82.    Upon information and belief, Cobb instructed Lynch to take Matthew for a walk outside of the classroom.  Lynch was to wrap a sensory compression blanket around Matthew's body for use on the walk to help keep Matthew calm.  Lynch had never been trained or instructed on how to use such a blanket.  During the walk, Matthew lost his balance while using the blanket and inadvertently knocked Lynch into a wall.

83.    Upon information and belief, Lynch returned Matthew to the classroom and appeared increasingly emotionally escalated.

84.    When Matthew became agitated in the classroom shortly thereafter, Lynch— instead of employing calming techniques with Matthew—picked up a classroom chair and aggressively thrust the chair's metal legs at Matthew as if Matthew was an animal to be tamed. While doing so, and while flustered, Lynch expressed to Cobb that he did not know how to handle the situation.

85.    Shortly thereafter, Lynch struck Matthew with an open hand across Matthew's face and neck, knocking Matthew to the ground and causing him to hold his face and neck in pain.  Matthew, a child who had just been assaulted by the adult meant to teach and care for him, laid crying on the floor at Lynch's feet.

- 13 -

86.     In response to Lynch's strike on Matthew, Cobb ran into the hall outside of Matthew's classroom and screamed for help.  Pinecrest's school resource officer, Officer Mario Kaiser ("Officer Kaiser"), heard Cobb's screams, as Officer Kaiser was assisting a student who had been injured in a nearby building.

87.     When Officer Kaiser responded to Cobb's screams for help and entered the classroom, Lynch immediately ran out of the classroom and passed Officer Kaiser.

88.     As he ran away, both Officer Kaiser and Cobb heard Lynch yell at Matthew and to whomever else could hear, "I can't do this anymore, he [Matthew] needs to be in an institution!"

89.     Cobb then informed Officer Kaiser that Lynch had struck Matthew on his face and neck.  Officer Kaiser observed Matthew to be visibly upset and that he appeared to be crying.

90.     It is never appropriate for a teacher or caregiver to strike <u>any</u> child and it is horrifically inappropriate and profoundly traumatizing for a teacher or caregiver to strike a defenseless, severely autistic, and non-verbal child.

***Pinecrest's Attempts to Conceal Lynch's Assault and Failures to Inform the Wells Family***

91.     Shortly after Officer Kaiser responded to Cobb's cries for help, Phillips and two Pinecrest Assistant Principals—Alvita Thomas and Kathryn Lockamy—entered the classroom. Cobb informed Phillips, Thomas, and Lockamy that Lynch had struck Matthew on the face and neck.

92.     Phillips directed Lockamy to take Cobb to a separate location and interview her regarding what happened.  Phillips directed Thomas to interview Lynch, who had run outside of the school building.

- 14 -

93. Because he is non-verbal, Matthew was not able to verbally communicate to Phillips, Thomas, or Lockamy that Lynch had assaulted him. Upon information and belief, neither Phillips, Thomas, Lockamy, nor any other members of Pinecrest's administration or staff attempted to have Matthew communicate in non-verbal ways what happened to him. Moreover, no member of Pinecrest's administration sought to meaningfully examine Matthew's injury, assess his medical needs, or offer him comfort.

94. Instead, upon information and belief, Pinecrest's administration immediately went to work in seeking to conceal what happened to Matthew, knowing that Matthew could not verbalize what had occurred.

95. Despite being aware that Matthew had been assaulted and battered by Lynch, Pinecrest did not report Lynch's various assaults and batteries of Matthew to the Wells family. When the Wells family picked Matthew up from school on September 16, 2021 following Lynch's assaults, Phillips and Lockamy walked Matthew to the Wells family's car, which was atypical. When the Wells family asked if something was wrong, Phillips solely responded that there was "an incident" between Matthew and his TA, but that "everything was fine."

96. Instead of disclosing what had occurred with Lynch, Phillips conveyed to the Wells family how pleased she was with Matthew's progress in school.

97. Phillips and Lockamy failed to give the Wells family any further information, including, but not limited to, that (1) Matthew had been assaulted by Lynch on multiple occasions that day; (2) Lynch hit Matthew on his face and neck, Matthew had fallen to the ground in pain, and was visibly upset immediately following the assault; and (3) Pinecrest's resource officers had been called to respond to the assault.

- 15 -

98.     Upon his return from school on September 16, 2021 and continuing for the next several days, Matthew was unusually upset, unhappy, and withdrawn at home.  In particular, Matthew spent long hours lying alone in silence on the Wells family's couch, which was uncharacteristic of him.  The Wells family did not understand why Matthew was acting in this manner, especially as Matthew is unable to verbally express himself.

99.     On September 17, 2021, while dropping Matthew off at school, the Wells family asked Cobb what had happened the day prior, but Cobb told the Wells that they would have to speak with Phillips directly about what happened.

100.    Accordingly, the Wells family emailed Ms. Phillips to determine what happened, but received no reply.

101.    The Wells family then called Phillips directly and asked what happened on September 16, 2021.  Instead of disclosing the assault, Phillips just told the Wells family that Lynch was not going to be working with Matthew any longer.

102.    Two weeks after the assault on Matthew, Captain Rodney Hardy of the Moore County Schools Police Department contacted the Wells family and disclosed to them for the first time that Matthew had been assaulted by Lynch on September 16, 2021.  Captain Hardy refused to disclose any details regarding the assault.

103.    The Wells family contacted Cobb that same day to get more information about the assault.  Cobb was surprised that the school had not informed the Wells family of the assault, and was hesitant to tell the Wells family exactly what happened. Cobb eventually told the Wells family that Lynch had struck Matthew.

- 16 -

104.     The Wells family also contacted Phillips and other members of Moore County Schools' administration to inquire as to the details of the assault and to determine why Moore County Schools had failed to report the assault on Matthew to his parents.

105.     Moore County Schools failed to explain its failure to report the assault to the Wells family.

106.     To date, Moore County Schools has failed to provide a formal explanation of what happened to Matthew on September 16, 2021.

107.     On September 17, 2021—the day after Lynch assaulted Matthew—Moore County Schools allowed Lynch to return to school and assist as a TA in another Exceptional Children's Program classroom.

108.     Lynch voluntarily resigned his position as a TA with Pinecrest on September 17, 2021.

109.     Cobb voluntarily resigned as a teacher at Pinecrest on September 27, 2021.  Upon information and belief, Cobb resigned due to the disturbing nature of Lynch's assault and Moore County Schools' failure to adequately address it.

110.     The Moore County Schools Police Department investigated Lynch's assault and battery of Matthew and, after obtaining the Wells' support for a criminal prosecution, referred the case to the Moore County District Attorney for prosecution.  The Moore County District Attorney subsequently filed criminal charges against Lynch for his assault and battery of Matthew.

### *The Assault's Impact on Matthew and Moore County Schools' Misconduct*

111.     Since and due to the assault, Matthew has been traumatized.  His trauma has significantly impacted his ability to carry on his normal activities and to access education.

- 17 -

Specifically, he has been withdrawn, combative, unhappy, prone to violent outbursts, and scared to return to Pinecrest. While at Pinecrest, his trauma was triggered, and he was unable to participate in his education.

112. Since and due to the assault, Matthew has been distrustful of male teachers and TAs, and has been uncharacteristically stressed, agitated, and combative towards them.

113. As a result of the psychological trauma Matthew endured as a result of the assault, he needs to receive educational services in an environment that does not trigger his trauma, specifically through well-trained, supportive staff, in a setting in which he feels safe.

114. Moore County Schools utterly failed to accommodate Matthew's need for a safe, supportive, and therapeutic environment. After the assault, and while attending Pinecrest, Matthew returned home with inexplicable bruises on several occasions, none of which were accompanied by explanatory reports from anyone at Pinecrest.

115. On or around August 16, 2022—just *two weeks* before Matthew was set to commence the 2022-2023 school year at Pinecrest—Moore County Schools notified the Wells family that they did not have the resources and teachers available to teach and care for Matthew. As such, Moore County Schools communicated to the Wells family that Matthew would have to look elsewhere for his schooling, and consistently failed to provide Matthew with a viable alternative schooling option. Moore County Schools ultimately permitted Matthew to return to Pinecrest, but regularly failed to implement his IEP following his return.

116. Moore County Schools' failure to provide Matthew with the educational services required by his IEP and its failure to provide Matthew with a consistent, stable, and safe learning environment, exacerbated the negative impacts of Matthew's pre-existing intellectual and developmental disabilities and compounded his trauma.

117.    Moore County Schools' failure to implement Matthew's IEP and its failure to provide Matthew with a consistent, stable, and safe learning environment required the Wells family to hire an educational consultant at their own personal cost to assist Matthew in returning to and remaining in school.

118.    Indeed, as a result of Moore County Schools' failure to implement Matthew's IEP and its failure to provide Matthew with a consistent, stable, and safe learning environment, Matthew has been forced to attend a school outside of Moore County Schools' territorial jurisdiction.

119.    Moore County Schools' failure to implement Matthew's IEP and its failure to provide Matthew with a consistent, stable, and safe learning environment has deprived Matthew of his right to equal access to the benefits and services Moore County Schools provides to other students.

120.    Moore County Schools' failure to implement Matthew's IEP and its failure to provide Matthew with a consistent, stable, and safe learning environment has deprived Matthew of his right to an education as guaranteed him by Article I, § 15 of the North Carolina State Constitution.

### FIRST CLAIM FOR RELIEF – VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101 *ET SEQ.* (AS TO MOORE COUNTY SCHOOLS)

121.    Plaintiff incorporates and alleges all allegations set forth in this Complaint as if set forth fully herein.

122.    Matthew is a qualified individual with a disability under the ADA because his autism is a physical or mental impairment that substantially limits one or more major life activities.    Additionally, Matthew has sustained trauma as a result of the actions of Moore

County Schools, and this trauma is a mental impairment that substantially limits one or more major life activities.

123.　　Moore County Schools receives federal funding.

124.　　Matthew requires reasonable accommodations in order to access educational services. Specifically, he needs a safe and therapeutic environment in order to avoid the triggering of his trauma and to avoid harm to his mental health and development.

125.　　Depriving Matthew of a therapeutic and safe environment free from physical harm or restraint causes Matthew real and lasting harm.

126.　　Prior to September 16, 2021, Moore County Schools regularly failed to implement Matthew's IEP and provide him with a safe, therapeutic environment free from the threat of physical harm or restraint for Matthew's learning.

127.　　On September 16, 2021, Moore County Schools failed to implement Matthew's IEP and provide him with a safe, therapeutic environment free from the threat of physical harm or restraint for Matthew's learning when it allowed Lynch to assault and batter Matthew.

128.　　Since September 16, 2021, Moore County Schools has failed to implement Matthew's IEP and provide him with a safe, therapeutic environment free from the threat of physical harm or restraint for Matthew's learning.

129.　　Moore County Schools, by failing to provide a safe, therapeutic place for him to receive educational services—including by assigning Lynch to work with Matthew and allowing Lynch to assault and batter Matthew—prevented Matthew from accessing education by reason of his disabilities. By refusing to accommodate Matthew's need to feel safe at school, Moore County Schools has violated the ADA by failing and refusing to make reasonable accommodations necessary for Matthew to access Moore County Schools' programs and

services.

130.  Moore County Schools, before, on, and after September 16, 2021 violated the ADA by excluding and/or not affording Matthew an equal opportunity to participate in or benefit from its programs and services equal to that afforded to others, including by isolating Matthew from his peers.

131.  Moore County Schools was on notice and was fully aware of Matthew's need for a safe, therapeutic environment free from the threat of physical harm or restraint in order to access educational services. However, Moore County Schools failed to provide a safe, therapeutic environment free from the threat of physical harm or restraint for Matthew's learning.

132.  Instead, Moore County Schools allowed Lynch, an untrained TA, to enter Matthew's classroom and assault and batter Matthew and, in doing so, violated the ADA.

133.  Matthew has been available and desirous of attending school at all times during the period at issue.

134.  As a result of Moore County Schools' refusal to accommodate Matthew's disabilities, Matthew cannot access educational services in Moore County.

135.  Moore County Schools has intentionally discriminated against Matthew by acting with deliberate indifference to Matthew's need for a safe, therapeutic environment free from the threat of physical harm or restraint for his learning.

136.  At all relevant times, Moore County Schools knew that denying Matthew this accommodation meant that, by reason of his autism, he would be denied the benefit of programs and services offered to others.

137.  The Wells family repeatedly requested that Moore County Schools provide

Matthew with a safe educational environment, both before and after Lynch's assault and battery of Matthew, and Moore County Schools' personnel have been fully aware of Matthew's need for accommodation and the mental, psychological, emotional, and developmental damage that has resulted from their refusal to provide this accommodation.

138.    Moore County Schools has been deliberately indifferent to the harm they have caused.

139.    Matthew has suffered real and lasting harm as a result of Moore County Schools' failure to accommodate his disability.

140.    As a direct and proximate result of Moore County Schools' violations of the ADA, Matthew has been damaged in an amount to be established at trial.

141.    Matthew suffers ongoing and irreparable harm as a result of Moore County Schools' continued discrimination and violations of the ADA and this harm will continue until Moore County Schools' conduct is declared unlawful and enjoined by this Court.

## SECOND CLAIM FOR RELIEF – NEGLIGENT SUPERVISION (AS TO MOORE COUNTY SCHOOLS)

142.    Plaintiff incorporates and alleges all allegations set forth in this Complaint as if set forth fully herein.

143.    Lynch was unfit and incompetent to serve as Matthew's TA, the employment assigned to him by Moore County Schools.

144.    Lynch's unfitness and incompetence to serve as Matthew's TA at Pinecrest is made clear by Lynch's lack of training, experience, or certification in teaching students with intellectual and developmental disabilities.   Lynch himself acknowledged his unfitness and incompetence through communicating the same to Pinecrest's administration and employees prior to and on the day of his assault of Matthew.

- 22 -

145.    Lynch's unfitness and incompetence to serve as Matthew's TA at Pinecrest may also be inferred from Lynch's assault of Matthew on September 16, 2021 when he aggressively pulled Matthew from one area of the classroom to another; overturned a classroom chair and thrust the metal chair legs at Matthew; and struck Matthew in the face and neck.

146.    Moore County Schools was also on actual notice of Lynch's unfitness and incompetence to serve as Matthew's TA because Lynch admitted directly to Pinecrest's administration prior to and on September 16, 2021 that he was unfit, incompetent, and unable to work and continue working as Matthew's TA.

147.    Alternatively, Moore County Schools was on constructive notice of Lynch's unfitness or incompetence to serve as Matthew's TA because, had Moore County Schools exercised ordinary care in supervising and overseeing Lynch as he served as Matthew's TA on September 16, 2021, Moore County Schools would have been aware that Lynch had repeatedly told Cobb that he "couldn't handle" working with Matthew, had repeatedly requested to be removed from Matthew's classroom, had assaulted Matthew by physically dragging him across the room, had assaulted Matthew with a chair, told Matthew and Moore County Schools' personnel that Matthew belonged in an institution, and had generally demonstrated that he was unfit, incompetent, and unable to properly and safely participate in Matthew's education, all before finally striking Matthew in the face and neck.

148.    Despite being on actual or constructive notice of Lynch's unfitness and incompetence to serve as Matthew's TA, Moore County Schools negligently instructed and required Lynch to return to Matthew's assigned room and continue working directly with Matthew on September 16, 2021.

149.    Moore County Schools' negligent actions in allowing Lynch to begin working

- 23 -

with Matthew at all on September 16, 2021 and certainly in sending Lynch back to Matthew's assigned room on September 16, 2021 despite Lynch's requests to cease working with Matthew because he "couldn't handle" it—instead of preventing him from returning to the classroom—led directly to Matthew being repeatedly assaulted by Lynch.

150.    Moore County Schools' negligent actions were willful, wanton, and reckless and in conscious and intentional disregard of and indifference to the rights and safety of Matthew.

151.    Lynch's assault of Matthew caused Matthew physical and emotional harm and distress on September 16, 2021.

152.    Lynch's assault of Matthew continues to cause Matthew mental and emotional harm and distress today and will continue to do so in the future.

153.    Moore County Schools' negligent actions and omissions were unreasonable and a breach of Moore County Schools' duty to properly supervise its employee, Lynch.

154.    As a direct and proximate result of Moore County Schools' negligent actions or omissions, Matthew has been damaged in an amount to be established at trial.

### THIRD CLAIM FOR RELIEF – NEGLIGENT RETENTION
### (AS TO MOORE COUNTY SCHOOLS)

155.    Matthew incorporates and alleges all allegations set forth in this Complaint as if set forth fully herein.

156.    Lynch was unfit and incompetent to serve as Matthew's TA, the employment assigned him by Moore County Schools.

157.    Lynch's unfitness and incompetence to serve as Matthew's TA at Pinecrest is made clear by Lynch's lack of training, experience, or certification in teaching students with intellectual and developmental disabilities.  Lynch himself acknowledged his unfitness and incompetence through communicating the same to Pinecrest's administration and employees

- 24 -

prior to and on the day of his assault of Matthew.

158.    Lynch's unfitness and incompetence to serve as Matthew's TA at Pinecrest may also be inferred from Lynch's assault of Matthew on September 16, 2021 when he aggressively pulled Matthew from one area of the classroom to another, overturned a classroom chair and thrust the metal chair legs at Matthew, and struck Matthew in the face and neck.

159.    Moore County Schools was also on actual notice of Lynch's unfitness and incompetence to serve as Matthew's TA because Lynch admitted directly to Pinecrest's administration prior to and on September 16, 2021 that he was unfit, incompetent, and unable to work and continue working as Matthew's TA.

160.    Alternatively, Moore County Schools was on constructive notice of Lynch's unfitness or incompetence to serve as Matthew's TA because, had Moore County Schools exercised ordinary care in supervising and overseeing Lynch as he served as Matthew's TA on September 16, 2021, Moore County Schools would have been aware that Lynch had repeatedly told Cobb that he "couldn't handle" working with Matthew, had repeatedly requested to be removed from Matthew's classroom, had assaulted Matthew by physically dragging him across the room, had assaulted Matthew with a chair, told Matthew and Moore County Schools' personnel that Matthew belonged in an institution, and had generally demonstrated that he was unfit, incompetent, and unable to properly and safely participate in Matthew's education, all before finally striking Matthew in the face and neck.

161.    Despite being on actual or constructive notice of Lynch's unfitness and incompetence to serve as Matthew's TA, Moore County Schools negligently retained Lynch as an employee assigned to Matthew on September 16, 2021.

162.    Moore County Schools' negligent actions in retaining Lynch as Matthew's TA

despite his unfitness and incompetence led directly to Matthew being assaulted by Lynch.

163.     Moore County Schools' negligent actions were willful, wanton, and reckless and in conscious and intentional disregard of and indifference to the rights and safety of Matthew.

164.     Lynch's assault of Matthew caused Matthew physical and emotional harm and distress on September 16, 2021.

165.     Lynch's assault of Matthew continues to cause Matthew mental and emotional harm and distress today and will continue to do so in the future.

166.     Moore County Schools' negligent actions and omissions were unreasonable and a breach of Moore County Schools' duty to only retain employees who were fit and competent for the employment assigned them by Moore County Schools.

167.     As a direct and proximate result of Moore County Schools' negligent actions or omissions, Matthew has been damaged in an amount to be established at trial.

## FOURTH CLAIM FOR RELIEF – NEGLIGENT HIRING
### (AS TO MOORE COUNTY SCHOOLS)

168.      Matthew incorporates and alleges all allegations set forth in this Complaint as if set forth fully herein.

169.     On September 16, 2021, Lynch committed several tortious acts against Matthew, including, but not limited to, assaulting Matthew with a chair, striking Matthew in the face and neck, and pushing Matthew to the ground.

170.     Moore County Schools owed Matthew a duty to employ fit, competent, and qualified employees in connection with Matthew's education that would not commit tortious acts against Matthew.

171.     Matthew and Lynch were both in a place they had a right to be at the time of Lynch's assault upon Matthew, namely, Pinecrest.

- 26 -

172. Matthew only met Lynch as the direct result of Moore County Schools' employment of Lynch as Matthew's TA on September 16, 2021.

173. Moore County Schools received a benefit from Lynch and Matthew's meeting because Moore County Schools was required to provide a TA to Matthew for Matthew's education and Lynch was serving as Matthew's TA.

174. Moore County Schools breached its duty to employ fit, competent, and qualified employees in connection with Matthew's education by hiring Lynch to serve as Matthew's TA.

175. Lynch was unfit and incompetent to serve as Matthew's TA, the employment assigned him by Moore County Schools.

176. Lynch's unfitness and incompetence to serve as Matthew's TA at Pinecrest may be inferred from Lynch's assault of Matthew with a chair on September 16, 2021 and Lynch's assault of Matthew by striking Matthew in the face and pushing him to the ground that same day.

177. Moore County Schools was on actual notice of Lynch's unfitness and incompetence to serve as Matthew's TA at the time Moore County Schools hired Lynch by virtue of the fact that Lynch had no training or experience formally teaching individuals with severe autism, no training in working with individuals with severe autism, and had never received any CPI or other force reduction training at the time of his hiring.

178. Despite being on actual notice of Lynch's unfitness and incompetence to serve as Matthew's TA, Moore County Schools hired Lynch to serve as Matthew's TA.

179. Moore County Schools' negligent hiring of Lynch was unreasonable and a breach of Moore County Schools' duty to hire only fit and competent employees to work with Matthew and participate in Matthew's education.

180. Moore County Schools' negligent actions were willful, wanton, and reckless and

in conscious and intentional disregard of and indifference to the rights and safety of Matthew.

181.    It was reasonably foreseeable, given Matthew's mental disabilities, non-verbal autism, and tendency to become combative when upset, that an unfit and incompetent employee like Lynch, if assigned to work with Matthew, would assault Matthew, and that such an assault would cause Matthew emotional distress and mental anguish.

182.    Lynch's assault of Matthew caused Matthew physical and emotional harm and distress on September 16, 2021.

183.    Lynch's assault of Matthew continues to cause Matthew mental and emotional harm and distress today and will continue to do so in the future.

184.    As a direct and proximate result of Moore County Schools' negligent actions or omissions, Matthew has been damaged in an amount to be established at trial.

### FIFTH CLAIM FOR RELIEF – VIOLATIONS OF ARTICLE I, § 15 OF THE NORTH CAROLINA CONSTITUTION (AS TO MOORE COUNTY SCHOOLS)

185.    Matthew incorporates and alleges all allegations set forth in this Complaint as if set forth fully herein.

186.    Matthew has a right to a sound basic education in a North Carolina public school pursuant to Article I, § 15 of the North Carolina State Constitution.

187.    Moore County Schools has a duty to provide Matthew with a sound basic education by accommodating his need to receive educational services in an environment that does not trigger his trauma, specifically through well-trained, supportive staff, in a setting in which he feels safe.

188.    Moore County Schools has utterly failed to accommodate Matthew's need for a safe, supportive, and therapeutic environment.  Since the assault, and while attending Pinecrest,

Matthew returned home with inexplicable bruises on several occasions, none of which were accompanied by explanatory reports from anyone at Pinecrest.

189.    On or around August 16, 2022—just two weeks before Matthew was set to commence the 2022-2023 school year at Pinecrest—Moore County Schools notified Matthew that they did not have the resources and teachers available to teach and care for Matthew. As such, Moore County Schools communicated to the Wells family that Matthew would have to look elsewhere for his schooling, and consistently failed to provide Matthew with a viable alternative schooling option.    Rather than offer reasonable accommodation so that Matthew could access educational services, Pinecrest sought to exclude Matthew from school as a result of his disabilities and as a result of the trauma he sustained at Pinecrest.

190.    Moore County Schools' failure to provide Matthew with educational services at all, let alone its failure to provide Matthew with a consistent, stable, and safe learning environment, exacerbated the negative impacts of Matthew's pre-existing intellectual and developmental disabilities, compounded his trauma, and deprived him of his right to the privilege of a sound basic education as guaranteed Matthew by Article I, § 15 of the North Carolina State Constitution.

191.    As a direct and proximate cause of Moore County Schools' failure to provide Matthew with a sound basic education as guaranteed Matthew by Article I, § 15 of the North Carolina State Constitution, the Wells family has been obligated to hire an educational consultant at their own personal cost to assist Matthew in returning to and remaining in school.

192.    Due to the Wells family's insistence and persistent work on Matthew's behalf, Moore County Schools placed Matthew in a school that could meet Matthew's needs. However, this school is located outside of Moore County, causing the Wells family to travel over 100 miles

each day for Matthew's education.

193.    As a direct and proximate result of Moore County Schools' failure to provide Matthew with a safe, sound, and basic education, Matthew has been damaged in an amount to be established at trial.

**SIXTH CLAIM FOR RELIEF – BATTERY**
**(AS TO LYNCH)**

194.    Matthew incorporates and alleges all allegations set forth in this Complaint as if set forth fully herein.

195.    On September 16, 2021, Lynch was one of Matthew's primary caretakers while he was at Pinecrest.

196.    On September 16, 2021, instead of assisting and caring for Matthew, Lynch terrorized, assaulted, and maliciously battered Matthew.

197.    Lynch forcefully and violently grabbed Matthew's arm and pushed and dragged Matthew from one area of Matthew's classroom to another.

198.    Lynch's act of grabbing Matthew's arm and violently and forcefully pushing and dragging Matthew around the classroom was an offensive touching of Matthew without Matthew's consent.

199.    Lynch's act of grabbing Matthew's arm and violently and forcefully pushing and dragging Matthew around the classroom was done with the malicious intent to cause harmful and offensive contact to Matthew.

200.    Lynch's act of grabbing Matthew's arm and violently and forcefully pushing and dragging Matthew around the classroom was, in fact, harmful and offensive where it was painful and upsetting to Matthew.

201.    Lynch's act of grabbing Matthew's arm and violently and forcefully pushing and dragging Matthew around the classroom upset Matthew and caused him pain.

202.    Lynch's act of grabbing Matthew's arm and violently and forcefully pushing and dragging Matthew around the classroom was done without any privilege, right, or excuse justifying Lynch's harmful and offensive act.

203.    Lynch's act of grabbing Matthew's arm and violently and forcefully pushing and dragging Matthew around the classroom was done with malicious intent.

204.    Later on that same day, Lynch struck Matthew in the face and neck with Lynch's hand, causing Matthew to fall to the ground in shock and pain.

205.    Lynch's act of striking Matthew in the face and neck with his hand was a malicious and offensive touching of Matthew without Matthew's consent.

206.    Lynch's act of striking Matthew in the face and neck with his hand was done with the malicious intent to cause harmful and offensive contact to Matthew.

207.    Lynch's act of striking Matthew in the face and neck with his hand was, in fact, harmful and offensive where it was painful and upsetting to Matthew.

208.    Lynch's act of striking Matthew in the face and neck with his hand upset Matthew and caused him pain.

209.    Lynch's act of striking Matthew in the face and neck with his hand was done without any privilege, right, or excuse justifying Lynch's harmful and offensive act.

210.    Lynch's battery of Matthew by grabbing Matthew's arm and pushing and dragging Matthew around the classroom and striking Matthew in the face and neck with Lynch's hand caused Matthew physical and emotional harm and distress on September 16, 2021.

211.    Lynch's battery of Matthew by grabbing Matthew's arm and pushing and

dragging Matthew around the classroom and striking Matthew in the face and neck with Lynch's hand continues to cause Matthew mental and emotional harm and distress today and will continue to do so in the future.

212.    Lynch's battery of Matthew was malicious, willful, and violent.

213.    As a direct and proximate result of Lynch's battery of Matthew, Matthew has been damaged in an amount to be established at trial.

**SEVENTH CLAIM FOR RELIEF – ASSAULT**
**(AS TO LYNCH)**

214.    Matthew incorporates and alleges all allegations set forth in this Complaint as if set forth fully herein.

215.    On September 16, 2021, Lynch was one of Matthew's primary caretakers at Pinecrest.

216.    On September 16, 2021, instead of assisting and caring for Matthew, Lynch terrorized, assaulted, and battered Matthew.

217.    Among other things, Lynch assaulted Matthew when Lynch grabbed a metal chair, upended it, and thrust the legs of the metal chair repeatedly at Matthew.

218.    When Lynch thrust the metal chair legs at Matthew, Lynch did so with the intent to scare and threaten Matthew with physical violence and injury.

219.    When Lynch thrust the metal chair legs at Matthew, Lynch was offering Matthew injury if Matthew did not move around Matthew's classroom as herded by Lynch.

220.    When Lynch thrust the metal chair legs at him, Matthew had a reasonable apprehension that Lynch would inflict bodily harm upon him.

221.    When Lynch thrust the metal chair legs at Matthew, Lynch had the apparent ability to inflict bodily harm upon Matthew with the metal chair.

222.    When Lynch thrust the metal chair legs at Matthew, Matthew was scared and reasonably believed that Lynch was going to cause Matthew imminent, immediate physical injury.

223.    Lynch upending a metal chair and thrusting the legs of that chair at Matthew was an overt act or attempt, or the unequivocal appearance of an attempt, with force and violence, to do immediate physical injury to Matthew and Matthew was put in a reasonable apprehension of immediate bodily harm by Lynch's act.

224.    Lynch's assault of Matthew was malicious, willful, and violent.

225.    As a direct and proximate result of Lynch's assault of Matthew, Matthew has been damaged in an amount to be established at trial.

## EIGHTH CLAIM FOR RELIEF – FALSE IMPRISONMENT (AS TO LYNCH)

226.    Matthew incorporates and alleges all allegations set forth in this Complaint as if set forth fully herein.

227.    On September 16, 2021, Lynch was one of Matthew's primary caretakers at Pinecrest.

228.    On September 16, 2021, instead of assisting and caring for Matthew, Lynch terrorized, assaulted, and battered Matthew.

229.    Among other things, Lynch upended a metal chair and used it to herd and trap Matthew in the classroom, preventing Matthew from moving freely around the classroom.

230.    When Lynch used a metal chair to herd and trap Matthew, preventing Matthew from moving freely in his own classroom, Lynch illegally restrained, detained, and restricted Matthew's freedom.

231.    Lynch's illegal restraint, detention, and restriction of Matthew's freedom were achieved by force and the threat of force.

232.    Lynch's illegal restraint, detention, and restriction of Matthew's freedom were against Matthew's will.

233.    Matthew was aware of Lynch's illegal restraint, detention, and restriction of Matthew's freedom.

234.    Lynch's illegal restraint, detention, and restriction of Matthew's freedom were malicious and willful.

235.    As a direct and proximate result of Lynch's illegal restraint, detention, and restriction of Matthew's freedom, Matthew has been damaged in an amount to be established at trial.

## DEMAND FOR JURY TRIAL

Matthew hereby demands a trial by jury on all issues in this matter for which a right to trial by jury exists.

## PRAYER FOR RELIEF

WHEREFORE, Matthew prays and requests of the Court:

1.    That Matthew have and recover from Defendants actual and compensatory damages in an amount to be established at trial, plus interest as allowed by law, to be proven in this action;

2.    That Matthew have and recover from Defendants punitive damages in an amount to be established at trial for Defendants' willful, wanton, reckless, malicious, and violent conduct described herein;

- 34 -

3.     A preliminary and permanent injunction requiring Moore County Schools to comply with the law;

4.     That Matthew have and recover from Defendants all his fees and costs, including reasonable attorneys' fees, pursuant to North Carolina law;

5.     That all costs of this action be taxed against Defendants;

6.     That the Court enjoin Moore County Schools from further violations of the ADA;

7.     That Matthew recovers all such other and further relief as the Court deems just and proper.

This the 18th day of May, 2023.

**K&L GATES LLP**

/s/ Robert J. Higdon
Robert J. Higdon, Jr., Esq.
North Carolina State Bar No. 17229
John H. Lawrence, Esq.
North Carolina State Bar No. 45462
Zachary S. Buckheit, Esq.
North Carolina State Bar No. 55123
K&L Gates LLP
P.O. Box 17047
Raleigh, NC 27619-7047
Telephone:  919.314.5610
E-mail: bobby.higdon@klgates.com
          john.lawrence@klgates.com
          zach.buckheit@klgates.com

*Attorneys for Plaintiff*