# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CHRISTOPHER M. WELLS AND LESLIE M. WELLS, on behalf of their son, MATTHEW WELLS, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:23CV412 |
| THE MOORE COUNTY SCHOOLS BOARD OF EDUCATION and JEFFREY LEE LYNCH, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Defendant Moore County Schools Board of Education's (the "Board") Motion to Dismiss Amended Complaint pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure. (Docket Entry 23.) Plaintiffs Christopher M. Wells and Leslie M. Wells (the "Wells" or "Plaintiffs"), on behalf of their son, Matthew Wells ("Matthew"), have filed an opposition brief and the Board has filed a reply. (Docket Entries 26, 27.) For the reasons stated herein, the undersigned recommends that the Board's motion be granted in part and denied in part.

## I. BACKGROUND

The Wells brought this action on behalf of their son Matthew who was subject to an assault occurring at Pinecrest High School ("Pinecrest") in Southern Pines, North Carolina on September 16, 2021, by Defendant Jeffrey Lynch ("Mr. Lynch"). (*See generally* Am. Compl.,

1

Docket Entry 20.)[1] More specifically, the Amended Complaint alleges that during the relevant period, Matthew was a 17-year-old non-verbal autistic student with an intellectual disability attending Pinecrest. (*Id.* ¶¶ 2, 21, 24, 46, 49.) While at Pinecrest, Matthew had an Individual Education Program ("IEP"), and "participated in Pinecrest's Extended Content Standard Course of Study, which is a program intended to serve students who, as a result of their disabilities, exhibit behaviors that require the most behavioral support." (*Id.* ¶¶ 27-28.) In educational settings, Matthew required "a safe and therapeutic environment free from the threat of physical harm or restraint[,]" thus he was assigned a one-on-one teaching assistant ("TA"), who was under the guidance of a classroom teacher. (*Id.* ¶¶ 53, 54.)

In mid-September 2021, Sierra Cobb was Matthew's teacher while Mr. Lynch was the TA. (*Id.* ¶ 56.) Mr. Lynch, having just started employment as a TA at Pinecrest, was recently assigned as Matthew's TA and received information on Matthew's intellectual and developmental disabilities. (*Id.* ¶¶ 85-86.) On September 10, 2021, Mr. Lynch informed Pinecrest's Exceptional Children's Program director of his lack of background and training to work with Matthew; however, his assignment remained, and Mr. Lynch reported to Matthew's classroom on September 16, 2021. (*Id.* ¶¶ 87-88, 90.) Ms. Cobb and Mr. Lynch reviewed areas of the classroom used for Matthew and reviewed Matthew's intervention plan. (*Id.* ¶¶ 91-92.) However, Mr. Lynch, unaware of how to interact with Matthew, was uncomfortable after beginning to work with him, and in turn, caused Matthew to become agitated. (*Id.* ¶¶ 93-94.) Plaintiffs allege that, at one point, "[Mr.] Lynch pushed Matthew into the padded area of the

---

[1] Pinecrest is in the Moore County Schools district. (*See* Am. Compl. ¶¶ 29-32.)

2

classroom." (*Id.* ¶ 95.) Matthew was frightened by Mr. Lynch's actions, could not verbally advocate for himself, and thus responded by throwing items. (*Id.* ¶¶ 96-97.)

Mr. Lynch subsequently spoke with the Program Director, expressing "that he was not adequately trained and did not want to continue working with Matthew." (*Id.* ¶ 100.) After being instructed to continue working with Matthew, Mr. Lynch returned to the classroom which was in disarray from the items thrown by Matthew. (*Id.* ¶¶ 100-101.) Ms. Cobb then instructed Mr. Lynch to take Matthew for a walk requiring use of a sensory compression blanket which Mr. Lynch had not been trained to use. (*Id.* ¶ 102.) As a result, "Matthew lost his balance while using the blanket and inadvertently knocked [Mr.] Lynch into a wall." (*Id.*) After returning to the classroom, Matthew was again agitated, and Plaintiffs allege that

> [Mr.] Lynch— instead of employing calming techniques with Matthew, and while ignoring Ms. Cobb's instructions to back away from Matthew—picked up a beanbag chair and used it to aggressively push Matthew around the classroom and then picked up a classroom chair and aggressively thrust the chair's metal legs at Matthew as if Matthew was an animal to be tamed, repeatedly yelling, "get back beast!" at Matthew all the while. While doing so, and while flustered, [Mr.] Lynch expressed to Ms. Cobb that he did not know how to handle the situation.
>
> Shortly thereafter, [Mr.] Lynch approached Matthew and struck Matthew with an open hand across Matthew's face and neck, knocking Matthew to the ground and causing him to hold his face and neck in pain. [Mr.] Lynch then stood over Matthew, looking down at him.

(*Id.* ¶¶ 104-105.) After the incident, Matthew was on the floor crying, Ms. Cobb ran for help, and Mr. Lynch ran out the classroom. (*Id.* ¶¶ 106-109.)

Pinecrest's school resource officer responded to Ms. Cobb, and the school's principal along with two other assistant principals came to the classroom shortly thereafter. (*Id.* ¶¶ 108,

3

112.)  After Ms. Cobb explained what happened, the principal first suggested that Ms. Cobb "retract her assault accusation against [Mr.] Lynch."  (*Id.* ¶¶ 112-113.)   The Amended Complaint further alleges that "administration immediately went to work in seeking to conceal what happened to Matthew, knowing that Matthew could not verbalize what had occurred." (*Id.* ¶ 115.)   Allegedly "no member of Pinecrest's administration sought to meaningfully examine Matthew's injury, assess his medical needs, or offer him comfort."  (*Id.* ¶ 114.)  When Matthew was picked up from school that day, the principal only indicated "that there was 'an incident' between Matthew and his TA, but that 'everything was fine.'"  (*Id.* ¶ 116.)  Plaintiffs sought additional information the next day but was only told that Mr. Lynch would no longer be working with Matthew.  (*Id.* ¶¶ 120-122.)  Two weeks later, Plaintiffs learned of the assault by Mr. Lynch after being contacted by the Moore County Schools Police Department although no details were given.   (*Id.* ¶ 123.)   Plaintiffs then contacted Ms. Cobb to get further information, who was instructed not to speak to Plaintiffs about the incident.  (*Id.* ¶ 124.)  "Ms. Cobb eventually told the Wells family that [Mr.] Lynch had struck Matthew."  (*Id.*)  Mr. Lynch returned to school as a TA in another Exceptional Children's Program classroom on September 17, 2021, but voluntary resigned from his position on that day.  (*Id.* ¶¶ 128-129.) Further, criminal charges were brought against him for the incident involving Matthew.  (*Id.* ¶ 131.)  Ms. Cobb also resigned from her position at Pinecrest around the same time.  (*Id.* ¶ 130.)

Plaintiffs allege that Matthew has been traumatized as a result of the incident, he has "returned home with inexplicable bruises on several occasions" before and after the assault,

and ultimately Matthew has been forced to attend a school in another jurisdiction as the Board has failed to meet its obligations to Matthew. (*Id.* ¶¶ 132-140.)

Plaintiffs allege several claims in this action. First, Plaintiffs assert a violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), against the Board. (*Id.* ¶¶ 141-176.) As part of this claim, Plaintiffs allege that the Board has a practice of hiring "unqualified, untrained, and unprepared individuals to serve as TAs" to work in its special needs classrooms and knew incidents like that with Matthew would result "because special needs teachers, such as Ms. Cobb, had informed Moore County Schools that such improper force was being used." (*Id.* ¶¶ 152, 154; *see also* Docket Entry 20-2.) Plaintiffs state that the Board "has intentionally discriminated against Matthew by acting with deliberate indifference to Matthew's need for a safe, therapeutic environment free from the threat of physical harm or restraint for his learning." (Am. Compl. ¶ 171.) As to the second claim, Plaintiffs assert that the Board violated the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, for failing and refusing to make reasonable accommodations for Matthew to access school programs and services. (*Id.* ¶¶ 177-185.) In addition, Plaintiffs assert assault, battery, and false imprisonment claims as a result of the September 16, 2021 incident. (*Id.* ¶¶ 186-227.)[2]

## II. <u>DISCUSSION</u>

The Board moves to dismiss on several grounds: (1) Plaintiffs' Amended Complaint lacks standing and fails to comply with Civil Procedure Rule 17; (2) Plaintiffs' claims against the Board should be dismissed because they fail to state a claim for compensatory damages; (3) and Plaintiffs' claim for punitive damages should be dismissed. (Docket Entry 24 at 12-

---

[2] These claims are solely against Defendant Lynch.

28.)[3]  In response, Plaintiffs contend that they have standing to bring this action and that the Amended Complaint states a claim for relief under the ADA and Rehabilitation Act.  (Docket Entry 26 at 9-25.)

1. <u>Standing/Federal Rule of Civil Procedure 17</u>

The Board contends that Plaintiffs' Amended Complaint should be dismissed for lack of standing and failure to comply with Rule 17.  (Docket Entry 24 at 12-14.)  Rule 12(b)(1) of the federal rules provides for dismissal where the court lacks jurisdiction over the subject matter of the lawsuit.  Should a defendant challenge the existence of federal subject-matter jurisdiction, the plaintiff bears the burden of showing that jurisdiction exists.  *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).  A defendant may assert a facial challenge or factual challenge to subject matter jurisdiction.  *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).  "In pursuing a facial challenge, the defendant must show that a complaint fails to allege facts upon which subject-matter jurisdiction can be predicated.  In a factual challenge, on the other hand, the defendant maintains that the jurisdictional allegations of the complaint are not true."  *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 892 F.3d 613, 621 n.7 (4th Cir. 2018) (citations omitted).  A "court should grant the Rule 12(b)(1) motion to dismiss 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'"  *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (quoting *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

---

[3] Unless otherwise noted, all citations in this recommendation to documents filed with the Court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

In establishing the existence of subject matter jurisdiction, the plaintiff must demonstrate, among other things, that he has standing to assert his claims. *See Lone Term Care Partners, L.L.C. v. United States*, 516 F.3d 225, 230 (4th Cir. 2008) (stating that "standing implicates th[e] court's subject matter jurisdiction"); *see also* Fed. R. Civ. P. 17(a) ("An action must be prosecuted in the name of the real party in interest"). Thus, "[i]f a plaintiff lacks standing, the federal courts have no business deciding the case, or expounding the law in the course of doing so." *House v. Mitra QSR KNE LLC*, 796 F. App'x 783, 789 (4th Cir. 2019) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (original brackets omitted)). In such instances, the case must be dismissed. *See Yelverton v. Yelverton Farms, Ltd.*, No. 5:09-CV-331-FL, 2011 WL 13128120, at *3 (E.D.N.C. Mar. 7, 2011) (unpublished) ("If the court finds that the plaintiff does not have standing to assert his claims because he is not the real party in interest, the court lacks subject matter jurisdiction and should dismiss the case."), *dismissed*, 453 F. App'x 355 (4th Cir. 2011). Courts generally assess standing at the outset of a matter, *see Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000); *House*, 796 F. App'x at 787, or when the pleadings are amended, *see Stone v. Trump*, 400 F. Supp. 3d 317, 339 (D. Md. 2019).

Here, Plaintiffs' Amended Complaint alleges that "Matthew has an intellectual disability, is incompetent to act on his own behalf, and the Wells family accordingly acts on Matthew's behalf." (Am. Compl. ¶ 21.) Further, it alleges that "[t]he Wells family has been legally appointed as Matthew's guardian[,] and thus, "[t]he Wells family accordingly has standing to bring this suit on Matthew's behalf." (*Id.* ¶¶ 22-23.) Attached to the Amended

Complaint is an official Letters of Appointment from the North Carolina state court dated March 3, 2022. (Letters of Appointment, Ex. A, Docket Entry 20-1.)

The Board argues that the Letters of Appointment attached to the Amended Complaint is insufficient to confer standing on the Wells to bring this action on Matthew's behalf. (Docket Entry 24 at 13.) Specifically, the Board notes that the Letters of Appointment authorizes the Wells to have "guardian of the person" of Matthew, but they have "no authority to receive, manage or administer the property, estate or business affairs" of Matthew. (*See id.* (citing Letters of Appointment).) The Board further argues that Plaintiffs have not alleged, nor have shown, that they are Matthew's guardian *ad litem.* (*Id.* at 14.) In response to the Board's motion, the Wells attached a General Guardian appointment dated October 16, 2023, giving them authority to "receive, manage and administer the property, estate and business affairs" of Matthew, and to have "custody, care and control" of him. (*See* Docket Entry 26-1.) The Wells argue that although the General Guardian appointment was not attached to the Amended Complaint, the Amended Complaint nevertheless alleges that the Wells Family has standing to bring this suit on Matthew's behalf, and the Court should take judicial notice of the General Guardian appointment. (Docket Entry 26 at 10-11.)

"It is well settled that under Article III of the United States Constitution, a plaintiff must establish that a 'case or controversy' exists 'between himself and the defendant' and 'cannot rest his claim to relief on the legal rights or interests of third parties.'" *Smith v. Frye*, 488 F.3d 263, 272 (4th Cir. 2007) (citation omitted); *White Tail Park, Inc. v. Stroube,* 413 F.3d 451, 458 (4th Cir. 2005) ("[T]he standing limitation is derived from the cases or controversies requirement of Article III. A justiciable case or controversy requires a plaintiff who has alleged

such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." (internal brackets and quotation marks omitted)). A limited exception to this rule has been recognized, "under which a party may raise claims on behalf of another with whom they 'have a close relation' if the third party is unable 'to protect his or her own interests.'" *Coleman v. Prince George's Cnty. Bd. of Educ.*, No. DLB-21-68, 2023 WL 4483594, at *3 (D. Md. June 2, 2023) (internal brackets and citation omitted), *aff'd sub nom. Coleman v. Bd. of Educ. Prince George's Cnty.*, No. 23-1727, 2024 WL 379971 (4th Cir. Feb. 1, 2024). For example, Rule 17 of the Federal Rules of Civil Procedure allows for a "general guardian" to sue on "behalf of . . . an incompetent person." Fed. R. Civ. P. 17(c)(1)(A). In addition, "an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem." Fed. R. Civ. P. 17(c)(2). The local rules of this Court also set forth specific guidelines for incompetents as parties. *See* MDNC L.R. 17.1(a) ("Minors and incompetent persons may sue or defend only by their general or testamentary guardians within this state or by guardians ad litem appointed by this Court.").

Here, the issue is the Wells' capacity to sue on Matthew's behalf. There is no question that as of October 16, 2023, the Wells obtained an appointment as Matthew's general guardians. (Docket Entry 26-1.)[4] However, prior to such time during which this action was

_____

[4] The Court takes judicial notice of the General Guardianship as it is a public record that relates to the instant matter. *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239-40 (4th Cir. 1989) (judicial notice of state-court proceedings that directly relate to the issues pending in the federal court are permissible). Moreover, the Board's argument is an attempt to bring a factual challenge on the issue of subject matter jurisdiction, which "the trial court [has] the discretion to go beyond the allegations of the complaint [to] determine if there are facts to support the jurisdictional allegations." *Beck v.*

9

commenced and through the filing of the Amended Complaint, the Wells were not Matthew's general guardian nor guardian *ad litem* but only maintained "guardian of the person" of Matthew according to the Letters of Appointment. (*See* Letters of Appointment, dated March 3, 2022.) Indeed, the Wells concede to such. (*See* Docket Entry 26 at 9 ("The Board is technically correct in asserting that Exhibit A to Matthew's Amended Complaint reflects that the Wells Family was not Matthew's general guardian or guardian *ad litem*.").)

"Rule 17(b) of the Federal Rules of Civil Procedure provides that the capacity to sue or be sued shall be determined by the law of the state in which the district court is located." *Dash v. Walton*, No. 1:99CV00350, 2000 WL 1229264, at *2 (M.D.N.C. July 17, 2000) (unpublished). In North Carolina, guardian of a person does not confer rights of a representative to sue or defend on behalf of an incompetent person. *See* N.C. Gen. Stat. § 35A-1241 (explaining powers and duties of the guardian of the person); *Clawser v. Campbell*, 184 N.C. App. 526, 529, 646 S.E.2d 779, 782 (2007) ("[T]he statute dealing with Guardians of the Person confers no power to maintain action, only stating that such a Guardian may confer such consent as necessary to maintain a service."). Here, the Letters of Appointment attached to the Amended Complaint did not grant the Wells authority to bring suit on behalf of Matthew. Thus, to the extent the Wells sought to proceed as guardian of the person of Matthew or guardian *ad litem*, they would not have had the authority to do so. *See Metcalf v. Graham Cnty.*, No. 1:18-CV-00274-MR-DLH, 2018 WL 4924556, at *2 (W.D.N.C. Oct. 10, 2018) (grandparents had no standing to bring action on behalf of incompetent grandchild

---

*McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) (quotations and citation omitted). *See also GTE S. Inc. v. Morrison*, 957 F. Supp. 800, 803 (E.D. Va. 1997).

where no guardian *ad litem* had been appointed and grandparents were only guardian of the person of the grandchild), *aff'd*, 759 F. App'x 181 (4th Cir. 2019), and *aff'd*, 759 F. App'x 181 (4th Cir. 2019); *Lee by & through Shelton v. City of Fayetteville*, No. 5:16-CV-759-FL, 2017 WL 2274970, at *9 (E.D.N.C. May 24, 2017) (unpublished) ("[A] guardian of the person is incapable of bringing suit on behalf of an incompetent person[.]"). The undersigned nevertheless concludes that the Wells had standing to bring suit on behalf of Matthew as a "next friend" and as such, the Board's motion to dismiss for lack of standing and failure to comply with Rule 17 should be denied.

Pursuant to Fed. R. Civ. P. 17(c)(2), "an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem."[5] The Fourth Circuit requires "no special appointment process for the next friend." *Genesco, Inc. v. Cone Mills Corp.*, 604 F.2d 281, 285 (4th Cir. 1979). Rather, the Court must satisfy itself of two well-known prerequisites for 'next friend' standing:

> First, a 'next friend' must provide an adequate explanation . . . why the real party in interest cannot appear on his own behalf to prosecute the action. Second, the 'next friend' must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate, and it has been further suggested that a 'next friend' must have some significant relationship with the real party in interest.

*Jonathan R. v. Just.*, 688 F. Supp. 3d 355, 360 (S.D.W. Va. 2023) (quoting *Hamdi v. Rumsfeld*, 294 F.3d 598, 603 (4th Cir. 2002)). "Courts may imply the existence of a next friend relationship

---

[5] The undersigned acknowledges that the Wells were appointed as Matthew's general guardians in October 2023. However, that was after the commencement of this action. In any event, the undersigned is concluding that the same individuals suffice as next friend.

even where the party bringing suit has not explicitly alleged it." *Anderson v. Dorchester Cnty.*, No. 2:20-CV-2084-DCN-MGB, 2021 WL 1186637, at *5 (D.S.C. Mar. 30, 2021) (unpublished) (citation omitted).

Here, the undersigned concludes that the prerequisites are met in this case. (*See, e.g.*, Am. Compl. ¶¶ 21-22 (indicating that "Matthew has an intellectual disability, is incompetent to act on his own behalf, and the Wells family accordingly acts on Matthew's behalf"), ¶ 46 ("Matthew has been diagnosed with, among other things, Level Three Autism Spectrum Disorder, a profound neurodevelopmental disorder. Matthew has also been diagnosed with attention-deficit/hyperactivity disorder, as well as obsessive compulsive behavior."), ¶ 49 (indicating that Matthew is non-verbal), ¶ 139 (indicating that "[t]he Wells family advocated tirelessly for Matthew, even hiring an educational consultant at their own expense to try to make Moore County Schools meet its obligations to Matthew.").) Moreover, the Wells were guardian of the person of Matthew since March of 2022, and now are general guardians as of October 2023. Thus, even without delving into the issue of Matthew's competency, which is not questioned by the Board, "the court finds that [the Wells] ha[ve] presented an adequate explanation as to why [Matthew] cannot bring the suit himself." *Anderson*, 2021 WL 1186637, at *6. Moreover, it is clear that as Matthew's parents, the Wells are dedicated to the best interests of Matthew and have a significant relationship with him. Therefore, "[e]ven though [the Wells] ha[d] not moved for next friend appointment, a clear implicit next friend relationship exists here, such that the court may properly rely on it for standing purposes." *Id.* Thus, the Board's motion to dismiss on this ground should denied. *See id.*; *Jonathan R.*, 688 F. Supp. 3d at 360 ("Without general guardians, the plaintiffs were permitted under the Federal

Rules to commence this lawsuit by next friends, who became their representatives at the time they filed the Complaint on the minors' behalf."); *Pollreis v. Marzolf*, 446 F. Supp. 3d 444, 457 (W.D. Ark. 2020) ("It is clear to the Court that [the plaintiff] is bringing [children's] claims in her representative capacity and as their mother and next friend. Defendants' argument places form over obvious substance."), *rev'd and remanded on other grounds*, 9 F.4th 737 (8th Cir. 2021). However, the Wells should amend their complaint to name the real party in interest. *See* Fed. R. Civ. P. 17(a)(3) ("The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action."); *Anderson*, 2021 WL 1186637, at *16-17; *John v. Royal Caribbean Cruises, Ltd.*, No. 07-22766-CIV, 2008 WL 11407174 (S.D. Fla. June 11, 2008).

    2.  ADA and Rehabilitation Act Claims

    The Board next argues that the Amended Complaint fails to state a claim under the ADA and the Rehabilitation Act for compensatory damages. (Docket Entry 24 at 15-26.) A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id.*; *see also Simmons v. United Mortg. and Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not

13

allege enough facts to state a claim to relief that is plausible on its face.") (citations and quotations omitted). The "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, the standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 557).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Moreover, Section 504 of the Rehabilitation Act[6] similarly states that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The Fourth Circuit has explained:

> Title II of the ADA and Section 504 of the Rehabilitation Act
> prohibit discrimination against an individual because of his or her
> disability. 29 U.S.C. § 794(a) (prohibiting discrimination on the
> basis of disability against an "otherwise qualified individual with

---

[6] Under the second claim of relief, the Amended Complaint alleges that "Matthew is a qualified individual with a disability under *Section 504* of the Rehabilitation Act." (Am. Compl. ¶ 178 (emphasis added.)

14

a disability" in the administration of federal programs); 42 U.S.C. § 12132 ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.").

"Claims under the ADA's Title II and the Rehabilitation Act can be combined for analytical purposes because the analysis is substantially the same." *Seremeth v. Bd. of Cty. Comm'rs Frederick Cty.*, 673 F.3d 333, 336 n.1 (4th Cir. 2012) (internal quotation marks omitted). To establish a violation of either statute, plaintiffs must prove "(1) they have a disability; (2) they are otherwise qualified to receive the benefits of a public service, program, or activity; and (3) they were denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of their disability." *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 503 (4th Cir. 2016).

The ADA's Title II and the Rehabilitation Act "differ only with respect to the third element, causation." *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 461 (4th Cir. 2012). "To succeed on a claim under the Rehabilitation Act, the plaintiff must establish he was excluded 'solely by reason of' his disability; the ADA requires only that the disability was 'a motivating cause' of the exclusion." *Id.* at 461-62 (quoting *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 468-69 (4th Cir. 1999)).

*Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 750 (4th Cir. 2018).

The Board first contests that the Wells have sufficiently alleged a protected benefit, arguing that the allegations of "failure to provide a safe, supportive educational environment and improper force by other TAs against Matthew and other students" outside of the September 16, 2021 incident are "vague, conclusory, and speculative at best" and that there are "no facts specifically showing how, when, or that Matthew" was subject to isolation from his peers. (Docket Entry 24 at 16-17 (citations omitted).) The undersigned finds the Board's

15

argument unpersuasive. "With regard to the third prong of a disability discrimination claim, the Fourth Circuit has recognized 'three distinct grounds for relief: (1) intentional discrimination or disparate treatment; (2) disparate impact; and (3) failure to make reasonable accommodations.'" *Adams v. Montgomery Coll. (Rockville)*, 834 F. Supp. 2d 386, 393 (D. Md. 2011) (citing *A Helping Hand, LLC v. Balt. Cnty.*, 515 F.3d 356, 362 (4th Cir. 2008)). While Matthew's IEP may be relevant, the claims here are not based in the development of the IEP plan. Thus, the question is "whether the School Board's actions have denied [Matthew] and other disabled students access to the program in question[.]" *Shirey ex rel. Kyger v. City of Alexandria Sch. Bd.*, No. 99-1127, 229 F.3d 1143, 2000 WL 1198054, at *5 (4th Cir. 2000) (unpublished); *see also L.P. by J.P. & K.P., v. Wake Cnty. Bd. of Educ.*, No. 5:20-CV-481-BO, 2022 WL 2813038, at *4 (E.D.N.C. July 18, 2022) (unpublished).

Here, the Amended Complaint alleges that the Board was in violation by "failing to provide a safe, therapeutic place for Matthew to receive educational services and by failing and refusing to make reasonable accommodations necessary for Matthew to access Moore County Schools' programs and services." (Am. Compl. ¶ 38.) The Wells point to allegations of the Board's failure to provide adequately trained staff capable of keeping Matthew safe, including being "free from unnecessary restraint and seclusion and physical harm," and how such failure of accommodation denied Matthew access to a safe, therapeutic environment alongside other students. (*See id.*, ¶¶ 55, 71, 74-75, 105, 134-36, 138-40, 141-85.) The Wells also allege in the Amended Complaint "[t]he lack of qualifications, training, and preparedness of" staff that "led to multiple instances of improper uses of force against [disabled] students . . .," some of which Ms. Cobb is aware and unaware. (*Id.* ¶¶ 64-65.) The Wells also allege that before and after

16

the September 16th incident, "while attending Pinecrest, Matthew returned home with inexplicable bruises on several occasions, none of which were accompanied by explanatory reports from anyone at Pinecrest." (*Id.* ¶ 135.) Further, the Wells allege that the Board has "intentionally discriminated against Matthew by acting with deliberate indifference to Matthew's need for a safe, therapeutic environment free from the threat of physical harm or restraint for his learning." (*Id.* ¶ 171.) Therefore, considering these allegations and the Amended Complaint as a whole, the undersigned concludes that the Wells have sufficiently alleged that the Board failed to make reasonable accommodations surrounding Matthew's access to educational services.

The Board next argues that the Wells must demonstrate that Matthew was subjected to discrimination solely by reason of his disability, to which the Board further argues that the Amended Complaint fails to allege. (Docket Entry 24 at 17-19.) This argument too is unpersuasive. First, the Board incorrectly asserts that the "motivating factor" standard should not apply to ADA claims as it has been abrogated by recent Fourth Circuit and Supreme Court precedent. (*See id.* at 17 n.7 (citing *Gentry v. E. W. Partners Club Mgmt. Co. Inc.*, 816 F.3d 228, 236 (4th Cir. 2016); *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 340-41 (2020).) In another opinion by this Court, this argument was addressed:

> Contrary to UNC's contentions, *Gentry* did not abrogate *Baird. See Gentry*, 816 F.3d at 235 n.3. Rather, recognizing that *Baird*, "an ADA Title II case[,] . . . . [wa]s not controlling," *id.*, in *Gentry*, which involved a claim under Title I of the ADA, *see id.* at 233, the Fourth Circuit merely "decline[d the plaintiff's request] to extend *Baird's* analysis to th[e *Gentry*] case," *id.* at 235 n.3. Notably, since *Gentry*, the Fourth Circuit has continued to apply *Baird's* motivating factor standard to Title II claims.

*Bone v. Univ. of N. Carolina Health Care Sys.*, No. 1:18CV994, 2021 WL 395547, at *10 (M.D.N.C. Feb. 4, 2021) (unpublished), *report and recommendation adopted*, No. 1:18-CV-994, 2021 WL 3196437 (M.D.N.C. Mar. 31, 2021) (unpublished). *See also CMDS Residential, LLC v. Mayor & City Council of Baltimore*, No. CV CCB-21-1774, 2024 WL 1156309, at *5 (D. Md. Mar. 18, 2024) ("In *Baird*, the Fourth Circuit clearly and unequivocally held that the "motivating factor" standard applied to ADA Title II claims. . . . Whether *Gross* and *Gentry* have rendered *Baird* untenable may still be an open question, but the Fourth Circuit has not so held[.]"). Therefore, the undersigned need only apply the "motivating factor" standard to the Wells' ADA claim while considering the "but-for" standard for the claim under the Rehabilitation Act. *Bone*, 2021 WL 395547, at *10; *Wicomico*, 910 F.3d at 750.

Having established the standard, the undersigned concludes that the Amended Complaint sufficiently alleges that Matthew was subjected to discrimination solely because of his disability, thus satisfying the standards for both the ADA and Rehabilitation Act claims.[7] For example, the Wells allege that:

> Moore County Schools continued to allow unqualified, untrained, and unprepared TAs to work with Matthew; TAs that inevitably improperly used force against Matthew as a result of their lack of qualifications and training.
> . . .
> Force was improperly used against Matthew on multiple occasions as the result of Moore County Schools' practice of hiring unqualified, untrained, and unprepared TAs and allowing them to begin teaching students with intellectual and developmental disabilities before receiving the requisite training.

---

[7] *See Richardson v. Clarke*, 52 F.4th 614, 617 n.1 (4th Cir. 2022) ("Because § 504 imposes a stricter causation requirement than the ADA, where claims under both statutes are at issue, we analyze only the ADA claim because if that claims fails, the Rehabilitation Act claim must fail as well." (internal quotations and brackets omitted)).

Force was improperly used against Matthew by Lynch, who was hired by Moore County Schools pursuant to its practice of hiring unqualified, untrained, and unprepared TAs and allowing those TAs to begin teaching students with intellectual and developmental disabilities before receiving the requisite training.

. . .

Moore County Schools . . . knew that it was substantially likely that Matthew's rights under the ADA—including his right to access educational services, which requires that he be free from the threat of the improper use of physical force against him, free from restraint, and able to attend class alongside his peers—was substantially likely to be violated as the result of Moore County Schools' practice of hiring unqualified, untrained, and unprepared TAs to work with students with intellectual and developmental disabilities, including Matthew.

. . .

Moore County Schools placed Lynch—who was unqualified, untrained, and unprepared to serve as a TA—in Matthew's classroom where, as a direct result, Lynch violated Matthew's rights . . .

. . .

Moore County Schools, before, on, and after September 16, 2021 violated the ADA by excluding and/or not affording Matthew an equal opportunity to participate in or benefit from its programs and services equal to that afforded to others, including by isolating Matthew from his peers.

(Am. Compl. ¶¶ 136, 147-48, 155, 159, 165.) Considering these allegations and the Amended Complaint as a whole, the Wells have alleged sufficient facts to permit an inference that Matthew's disability was the sole cause in the Board's discrimination against him, by failing to provide a safe, therapeutic place for him to receive access to educational services, including being subject to improper uses of force by untrained and unqualified staff, assigning Mr. Lynch to Matthew and thereby subjecting Matthew to an assault, isolating Matthew from his peers

and ultimately forcing Matthew to attend school outside the Moore County Schools district. Thus, the Board's argument for dismissal on this issue should also be denied. *See e.g.*, *Dickinson v. Univ. of N. Carolina*, 91 F. Supp. 3d 755, 769 (M.D.N.C. 2015) ("'[T]he facts alleged in the complaint make plausible her ultimate claim that [the plaintiff was subject to action] because of disability discrimination.").

The Board next argues that the Wells do not allege factual allegations that would amount to bad faith, gross misjudgment, or intentional discrimination. (Docket Entry 24 at 19-24.) The Board points to the Fourth Circuit which stated that, "[t]o prove discrimination in the education context, something more than a mere failure to provide the free appropriate education required by [Individuals with Disabilities Education Act (IDEA)] must be shown." *Sellers by Sellers v. School Bd. of City of Mannassas*, 141 F.3d 524, 529 (4th Cir. 1998) (internal quotations and citation omitted). More specifically, "in the context of education of handicapped children," a plaintiff must demonstrate "either bad faith or gross misjudgment" to establish a claim under Section 504 of the Rehabilitation Act or the ADA. *Id.* (internal quotations and citation omitted); *see also Cone ex rel. Cone v. Randolph Cnty. Sch.*, 302 F. Supp. 2d 500, 513 (M.D.N.C.), *aff'd sub nom. Cone v. Randolph Cnty. Sch.*, 103 F. App'x 731 (4th Cir. 2004). The Fourth Circuit further explained the "context" referenced in *Sellers*:

> The "context" referred to in *Sellers* . . . dealt specifically with the development of appropriate . . . (IEP's) for disabled children, a process in which "[e]xperts often disagree" and which "is often necessarily an arguable matter." *Id.* (quoting *Monahan [v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir. 1982)]). Because negligent error in the development of an appropriate IEP does not amount to the kind of invidious discrimination at which the Rehabilitation Act or the ADA is directed, we adopted the heightened standard of "bad faith or gross misjudgment" for proving discrimination in

20

the specific context of developing appropriate IEP's for disabled
children.

*Shirey*, 2000 WL 1198054, at *4. Therefore, the circumstances of *Sellers* is not implicated solely because "the activities in question take place in a school and are directed at disabled children." *Id.* Rather, the heightened standard is in the specific context of the development of IEP's for disabled children. *Id.*; *Singletary ex rel. N.M.M. v. Cumberland Cnty. Sch.*, No. 5:12--CV-744-FL, 2013 WL 4674874, at *7-8 (E.D.N.C. Aug. 30, 2013).

Here, the undersigned concludes that the *Sellers* standard is inapplicable in this action because the development of Matthew's IEP pursuant to the IDEA is not the core issue. Instead, the Amended Complaint centers on whether the Board violated the ADA and Rehabilitation Act by knowingly allowing untrained and unqualified staff, including Mr. Lynch, to work with and improperly use force on and against Matthew, thereby failing and refusing to make reasonable accommodations for Matthew to access educational services offered to others by reason of his disability. Therefore, the Board's argument as to this issue should be denied. *See Shirey*, 2000 WL 1198054, at *5 ("There is nothing 'arguable' about safely evacuating disabled children from a school building during an emergency, and we doubt there are any 'experts' who would disagree about the need to do so."); *Doe v. Berkeley Cnty. Sch. Dist.*, No. 2:13-CV-3529-PMD, 2015 WL 7722425, at *9 (D.S.C. Nov. 30, 2015) (unpublished) ("[T]he *Sellers* rule does not apply to Mother's theory of disability discrimination based on violation of professional standards for student supervision.").

As to the ADA and Rehabilitation Act claims, the Board lastly argues that the Wells have not alleged deliberate indifference in violation of disability discrimination laws. (Docket

Entry 24 at 24-26.) The Wells oppose, contending that they "need not allege that the Board was deliberately indifferent to [Matthew's] rights" and that nevertheless, such facts have been alleged. (Docket Entry 26 at 21-24.) Here, the Court need not address the parties' argument regarding the applicability of the deliberate indifference standard as the undersigned concludes that the Amended Complaint sufficiently alleges that the Board acted with deliberate indifference to Matthew's rights under the ADA and Rehabilitation Act.

Assuming its application is relevant, the Fourth Circuit has explained that:

> [t]he deliberate-indifference standard is a common one in the law, though not one we have often applied to disability discrimination. In essence, the deliberate-indifference standard starts with determining whether there was-objectively speaking—an ongoing or likely violation of some federal right, and then moves on to determining whether a defendant had the appropriate mental state—subjectively speaking—toward that federal-rights violation. *See Scinto v. Stansberry*, 841 F.3d 219, 225-26 (4th Cir. 2016) (applying deliberate indifference in the Eighth Amendment context). . . .
>
> In the ADA context, other circuits have used a two-step deliberate-indifference test that requires: (1) knowledge that a federally protected right is substantially likely to be violated, and (2) failure to act despite that knowledge. *See, e.g., S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 265 (3d Cir. 2013); *Barber ex rel. Barber v. Colo. Dep't of Rev.*, 562 F.3d 1222, 1229 (10th Cir. 2009). We largely agree with that formulation, with the caveat that a plaintiff must begin by showing an ongoing or likely violation of a federally protected right before moving on to prove deliberate indifference through knowledge of that right and a failure to respond appropriately. If there wasn't any ADA violation (or any substantially likely ADA violation), there was nothing to be deliberately indifferent about. So to make out deliberate indifference in an intentional-discrimination case like this, we should look first to whether there was a likely or ongoing

22

> violation of federal rights. Only then may we move on to the
> mental state of deliberate indifference, which requires knowledge
> of a substantial risk of a deprivation of those rights and a failure
> to act to resolve that risk. . . .

*Koon v. North Carolina*, 50 F.4th 398, 404-05 (4th Cir. 2022). *See also Bone*, 2021 WL 395547, at

*2 ("[I]n order to prove deliberate indifference, a plaintiff must show that the defendant knew

that harm to a federally protected right was substantially likely and failed to act on that

likelihood.") (internal quotations and citation omitted)).

Here, the Amended Complaint alleges that the Board had knowledge of improper

physical force being used against disabled students by untrained and unqualified TAs, some

knowledge through its own employee Ms. Cobb. (Am. Compl. ¶¶ 64-67, 73; *see also* Ex. B to

Amended Compl., Docket Entry 20-2.) Despite the Board's awareness of the importance of

the proper training for students with intellectual and developmental disabilities, including but

not limited to crisis prevention intervention training, the Wells allege that the Board ignored

Ms. Cobbs' requests that properly qualified and trained TAs be hired or be trained before

beginning work, and that the Board's knows its practice of employing unqualified and

untrained TAs has resulted in and will continue to cause the improper use of physical force

against students with intellectual disabilities, including Matthew. (*Id.* ¶¶ 67-70, 72-74; *see also*

Ex. C to Amended Compl., Docket Entry 20-3.) Further, the Wells allege that despite the

Board's knowledge regarding the TAs, it acted with deliberate indifference as it did nothing to

prevent a violation of rights from occurring. (*Id.* ¶¶ 75-78.) Thus, at the pleading stage, the

undersigned finds that the Amended Complaint goes beyond conclusory, speculative, or vague

allegations and sufficiently alleges facts giving rise to a plausible inference of deliberate

indifference. *See Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (internal quotations and citation omitted). The Board's argument for dismissal on this issue, therefore, should also be denied.

### 3. Punitive Damages Against the Board

The final argument the Board makes is that Plaintiffs' claim for punitive damages against it should be dismissed. (Docket Entry 24 at 27-28.) Plaintiffs failed to address this argument in their opposition brief. By failing to respond, the undersigned construes this as a concession on this argument. *See Kinetic Concepts, Inc. v. Convatec Inc.*, No. 1:08CV00918, 2010 WL 1667285, at *8 (M.D.N.C. Apr. 23, 2010) (unpublished) ("[I]n a variety of different contexts, a large number of courts . . . have recognized the general principle that a party who fails to address an issue has conceded the issue.") (collecting cases). Moreover, "[p]unitive damages may not be awarded in suits brought under [Title II] of the ADA and § 504 of the Rehabilitation Act." *Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 373 (D. Md. 2011) (internal quotations and citation omitted). *See also Costello v. Univ. of N. Carolina at Greensboro*, 394 F. Supp. 2d 752, 761 (M.D.N.C. 2005) ("The United States Supreme Court has unequivocally held that . . . punitive damages cannot be awarded for violations of § 504 of the Rehabilitation Act."); *Parris for D.P. v. Cleveland Cnty. Bd. of Educ.*, No. 1:22-CV-00087-MR-WCM, 2022 WL 19406949, at *15 (W.D.N.C. Dec. 16, 2022) ("Punitive damages are not available under the ADA") (internal quotations and citation omitted), *report and recommendation adopted*, No. 1:22-CV-00087-MR-WCM, 2023 WL 2366977 (W.D.N.C. Mar. 6, 2023). In addition, "North Carolina case law supports the proposition that punitive damages are not available for a state

law claim against a governmental entity." *L.P. by J.P. & K.P.*, 2022 WL 2813038, at *12 (citing *North Carolina Motorcoach Ass'n v. Guilford Cnty Bd. of Educ.*, 315 F. Supp. 2d 784, 810 (M.D.N.C. 2004); *Ripellino v. N. Carolina Sch. Boards Ass'n, Inc.*, 158 N.C. App. 423, 431 (2003)). Accordingly, the undersigned will recommend that Plaintiffs' claim for punitive damages be dismissed.

III.    **CONCLUSION**

For the reasons stated above, **IT IS HEREBY RECOMMENDED** that Defendant Moore County Schools Board of Education's Motion to Dismiss Amended Complaint (Docket Entry 23) be **GRANTED IN PART AND DENIED IN PART**. The motion should be **GRANTED** as it relates to Plaintiffs' claim for punitive damages, but otherwise **DENIED**. **FURTHER**, Plaintiffs should be permitted an opportunity to amend the pleading and name the real party in interest.

                                    /s/  Joe L. Webster
                                United States Magistrate Judge

August 15, 2024
Durham, North Carolina

25