IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No: 1:23-cv-00412-UA-JLW

| | |
|---|---|
| CHRISTOPHER M. WELLS and LESLIE M. WELLS on behalf of their son, MATTHEW WELLS,<br><br>Plaintiffs,<br><br>v.<br><br>THE MOORE COUNTY SCHOOLS BOARD OF EDUCATION and JEFFREY LEE LYNCH,<br><br>Defendants. | **DEFENDANT MOORE COUNTY SCHOOLS BOARD OF EDUCATION'S PARTIAL OBJECTION TO THE MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**<br>(DE 30) |

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), Defendant Moore County Schools Board of Education (the "Board") respectfully objects in part to the Memorandum and Recommendation of the United States Magistrate Judge filed in this action on August 15, 2024 (DE 30) (the "Recommendation"), as specifically set forth herein.

**OBJECTION**

On September 25, 2023, the Board moved to dismiss Plaintiffs' Amended Complaint (DE 20) pursuant to Fed. R. Civ. P 12(b)(1), 12(b)(2), and 12(b)(6). (DE 23). The Board filed an accompanying brief in support of his Motion to Dismiss (DE 24), as well as a reply (DE 27) to Plaintiffs' response in opposition (DE 26). On August 15, 2024, the Magistrate Judge recommended that the

Board's Motion to Dismiss be granted in part and denied in part. (DE 30). The Board objects to the following aspects of the Recommendation: The Recommendation's conclusion that Plaintiffs stated a claim against the Board under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504"). The Board requests the Court to dismiss the Amended Complaint for failure to state a claim.

## ARGUMENT

This is not a disability discrimination case. Plaintiffs attempt to convert a straightforward personal injury claim based on alleged assault and battery by Defendant Jeffery Lynch into a disability discrimination case against Mr. Lynch's employer, the Board, by claiming Mr. Lynch was inadequately trained. There are many flaws in Plaintiffs' faulty logic, including that Plaintiffs allege that Mr. Lynch both (1) *was* trained before and while working with Matthew as well as (2) was supervised by a well-trained special education teacher. Further, the allegations do not support a conclusion that the Board failed to train Mr. Lynch "because of" Matthew's disability. As a result, the facts alleged do not support a claim for disability discrimination against the Board, and such claims should not proceed.

2

In further support of its objection, the Board hereby restates and incorporates by reference the arguments contained in its briefing on the Motion to Dismiss. (DE 24, DE 27).

## I.  <u>Standard of Review.</u>

A magistrate judge makes proposed findings and recommendations to the district court. Such proposed findings and recommendations carry no presumptive weight, and the district court retains the responsibility to make final determinations. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The district court must "make a de novo determination" regarding those portions of a magistrate judge's recommendation to which a party objects. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). The district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).

## II.  <u>Plaintiffs Fail to State a Claim.</u>

### A.  **The Recommendation Applied the Incorrect Legal Standard to Plaintiffs' Failure to Accommodate Claim.**

In concluding that the Amended Complaint states a claim for violations of the ADA and Section 504, the Recommendation applied the incorrect legal standard for failure to accommodate claims. (DE 30, at 13-17, 20-21). As explained below, the Recommendation erroneously applied the legal standard

3

applicable to physical barrier disability discrimination claims, not inadequate educational program claims. Applying the correct legal standard requires this case to be dismissed. Nonetheless, even under the incorrect legal standard, Plaintiffs still fail to state a claim.

        i.    <u>The heightened *Sellers* standard applies.</u>

If a student contends that he has been "excluded from an educational program," he must allege that "(1) he has a disability, (2) he is otherwise qualified to participate in the defendant's program, and (3) he was excluded from the program on the basis of his disability" to pursue an ADA or Section 504 claim. *Halpern v. Wake Forest Univ. Health Sciences*, 669 F.3d 454, 461 (4th Cir. 2012) (footnote omitted). The primary issue before the Court at this time is the third prong: whether Matthew was excluded from a benefit or program by the Board due to disability discrimination.

Courts analyze disability discrimination in the educational context in two ways: (1) For alleged discrimination in the educational program of a disabled student, courts apply the heightened *Sellers v. School Bd. of Manassas*, 141 F.3d 524 (4th Cir. 1998), standard, *i.e.*, "bad faith or gross misjudgment." "To prove discrimination in the education context, something more than a mere failure to provide the free appropriate education required by IDEA must be shown." *Id.* at 529 (cleaned up). *Sellers* applies, *inter alia*, when

4

considering the development and implementation of the appropriate individualized education program ("IEP") for disabled students. *Id.* (2) For alleged discrimination in the context of physical barriers, on the other hand, courts inquire whether the school district's actions denied the disabled student access to the program in question. *See Shirey ex rel. Kyger v. City of Alexandria Sch. Bd.*, 229 F.3d 1143, at *5 (4th Cir. 2000) (unpublished).

Here, the heightened *Sellers* standard applies. As recognized in the Recommendation, the Amended Complaint alleges that the Board (1) failed to provide a "safe, therapeutic place" for Matthew to receive educational services, *i.e.*, failed to provide adequately trained staff capable of keeping Matthew free from being unnecessarily restrained, secluded, or physically harmed; and (2) failed to reasonably accommodate Matthew in the same way. (DE 30, at 16-17). Both are alleged discrimination in Matthew's educational program, not physical barriers.

In *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 170, 137 S. Ct. 743, 755, 197 L. Ed. 2d 46 (2017), the Supreme Court concluded that the substance, or "gravamen," of the complaint, not merely the language of the allegations, determines whether a claim is about an educational program or physical barriers. *Fry* turned on whether a plaintiff must exhaust their administrative remedies before pursuing a disability claim in federal court. Its reasoning

5

applies equally here, however, where, in determining the legal standard to apply, the Court must analyze whether the Amended Complaint brings claims about (a) an educational program or (b) a physical barrier. *See Vlasaty v. Wake Cnty. Pub. Sch. Sys. Bd. of Educ.*, No. 5:17-CV-578-D, 2018 WL 4515877, at *6–7 (E.D.N.C. Sept. 20, 2018) (applying *Fry* and determining that the complaint's "factual allegations are all school-specific and concern the proper setting in which to educate," and then applying *Sellers* to ADA and 504 claims brought in the educational context); *Doe v. Berkeley Cnty. Sch. Dist.,* No. 2:13-CV-3529-PMD, 2015 WL 7722425, at *9 (D.S.C. Nov. 30, 2015) (noting that a court should look to the substance of a complaint, not the artful pleading by a plaintiff, to determine whether the issue is an educational program issue to which *Sellers* applies or a physical barriers issue); *see also Paul G. by & through Steve G. v. Monterey Peninsula Unified Sch. Dist.*, 933 F.3d 1096, 1101 (9th Cir. 2019) (citing *Fry*, 580 U.S. at 172) (concluding that the relief sought was "fundamentally educational — access to a particular kind of school as required by his IEP," rather than based on physical barriers to access); *Parent/Pro. Advoc. League v. City of Springfield, Massachusetts*, 934 F.3d 13, 25 (1st Cir. 2019) (quoting *Fry*, 580 U.S. at 170) ("On its surface, the complaint pleads disability-based discrimination: it alleges that the defendants are violating the ADA by unnecessarily segregating students with mental health

disabilities in a separate and unequal educational program. And the complaint never uses the term FAPE. Yet, the crux of the complaint is that the defendants failed to provide the educational instruction and related services that the class plaintiffs need to access an appropriate education in an appropriate environment. That is not a claim of simple discrimination; it is a claim 'contesting the adequacy of a special education program.'").

In applying *Fry*, the question of what standard applies to a discrimination claim then turns on whether the accommodation is "needed to fulfill the IDEA's FAPE requirement," *i.e.*, provide "individually tailored educational services," or whether the accommodation is for physical access. *See Fry*, 580 U.S. at 167–68 (noting the distinction between IDEA accommodations and other accommodations); *see also id.* at 1707–71. For the former, *Sellers* applies; for the latter, the physical barrier standard applies.

One way to determine the "gravamen" of the complaint is by asking the following questions:

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the

7

> same basic suit could go forward. But when the answer
> is no, then the complaint probably does concern a
> FAPE, even if it does not explicitly say so; for the
> FAPE requirement is all that explains why only a child
> in the school setting (not an adult in that setting or a
> child in some other) has a viable claim.

*Id.* at 171. The *Fry* Court repeatedly emphasized that the use of the phrases "Individualized Education Program" or "IEP," and "free appropriate public education" or "FAPE," is not required, but that courts must look at the substance of the allegations and independently determine whether the gravamen is about educational opportunities or physical barriers.[1]

In Plaintiffs' own words, the gravamen of the Amended Complaint is that the Board violated Matthew's "right to the safe environment necessary for him to access educational services free from unnecessary restraint, seclusion, and physical harm." (DE 26, at 3; *see also id.* at 8–9 (noting the claim is that Matthew "was denied the benefit of equal access to an education at Pinecrest")). Plaintiffs claim the violation occurred due to the Board's hiring "unqualified and untrained TAs" and assigning them to work with Matthew for disability-related reasons and point to one incident of harm to Matthew allegedly due to the Board's employment practices: when Jeffrey Lynch

---

[1] The court in *L.P., by & through her guardians, J.P. & K.P., v. Wake County Board of Education*, No. 5:20-CV-481-BO, 2022 WL 2813038 (E.D.N.C. July 18, 2022) erroneously stated the application of the standards too narrowly. *Id.* at *4–5.

8

allegedly slapped Matthew on September 16, 2021. (DE 26, at 3–4; *see also id.* at 9 ("the Board failed to provide . . . staff trained and otherwise capable of keeping Matthew safe," which "denied Matthew access to the safe, therapeutic environment where he could receive an education alongside his peers")). Although Plaintiffs removed most references to Matthew's IEP in the Amended Complaint (*compare generally* DE 1 *with* DE 20), in substance, the claims are educational program claims, not physical barrier claims, and thus, the heightened *Sellers* standard applies.

A school district's offer of reasonable accommodations for students with IEPs, like Matthew (DE 20, ¶ 28), is made via the student's IEP. 34 C.F.R. § 300.320(a)(6)(i) (setting forth the requirement that "[a] statement of any individual appropriate accommodations" be included in the student's IEP); NC 1503-4.1(a)(6)(i). Therefore, whether a disabled student with an IEP is appropriately accommodated is ***always*** a *Sellers* question regarding the development of an appropriate IEP. *See Shirey*, 229 F.3d 1143 ("The 'context' referred to in *Sellers* . . . dealt specifically with the development of appropriate Individualized Education Plans (IEP's) for disabled children . . . .").

Even if reasonable accommodation in IEPs are not always a *Sellers* question, the issues specifically here are. To determine whether this is a "discrimination in educational programming" case or "discrimination in

9

physical access" case, the Court should apply the *Fry* questions. *Id.* First, a claim about the propriety of assigning certain TAs to work with specific students, especially for disability-related reasons, is a claim that could only be brought in a school, not a theater or library, as assistants are not assigned to disabled individuals by public theaters or libraries. Second, such a claim could not be brought by an adult, such as an employee or visitor, to the school, because schools do not assign assistants to disabled adults at schools like they do students. These are educational program issues, not physical barrier issues, and thus the *Sellers* standard applies.[2] *See also O.V. v. Durham Pub. Sch. Bd. of Educ.*, No. 1:17CV691, 2018 WL 2725467, at *16 (M.D.N.C. June 6, 2018), *report and recommendation adopted*, No. 1:17-CV-691, 2018 WL 3370644 (M.D.N.C. July 10, 2018) (considering "the Supreme Court's 'clue[s regarding] whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination,'" and finding that,

---

[2] Though not the focus of the Recommendation, Plaintiffs also complain that Matthew was isolated from his peers. (DE 20, ¶¶ 52-58). The court in *O.V.* clearly outlined that such a claim is an educational program, not physical barriers, claim. *See also K.D. ex rel. J.D. v. Starr*, 55 F. Supp. 3d 782, 790 (D. Md. 2014) (noting that a decision to isolate a student is a *Sellers* issue); *Cone ex rel. Cone v. Randolph Cnty. Sch.,* 302 F. Supp. 2d 500, 513 (M.D.N.C.), *aff'd sub nom. Cone v. Randolph Cnty. Sch.,* 103 F. App'x 731 (4th Cir. 2004). IEPs determine classroom placement, including the degree to which disabled students are with their peers. 34 C.F.R. § 300.320(a)(5). As a result, *Sellers* sets the legal standard there, too.

"given the relevant conduct—failure to educate O.V. alongside his nondisabled contemporaries using the general curriculum—O.V. could not bring essentially the same claim against another public facility, such as a theater or library.") (citing *Fry*, 580 U.S. at 171).

The cases cited in the Recommendation, in fact, support the Board's position. (DE 30, at 21-22). The court in *Singletary ex rel. N.M.M. v. Cumberland Cnty. Sch.,* No. 5:12--CV-744-FL, 2013 WL 4674874 (E.D.N.C. Aug. 30, 2013), determined that *Sellers* applies to claims of faulty IEPs but does not apply to claims regarding lack of access due to physical barriers (*i.e.*, stairs). *Id.* at *8. This holding aligns with the Board's position: *Sellers* applies to educational program claims but not physical barrier claims. Nothing in *Singletary*, though, supports the Recommendation's conclusion that the assignment of a flawed TA is not an educational program claim.

The court in *Doe* determined that the *Sellers* standard applied to a complaint regarding the necessity of supervision of a disabled child by an adult as needed for her disability. 2015 WL 7722425, at *9. The court further determined that *Sellers* is not applicable to a complaint regarding the necessity of supervision of children generally. *Id.* In other words, where a certain sort of supervision is necessary because a child is disabled, *Sellers* applies, but where the complaint concerns supervision applicable to all children, *Sellers* does not

11

apply. Again, this distinction supports the Board's argument that *Sellers* applies here because the supervision complained of in the Amended Complaint is squarely about the distinct supervision Matthew needed due to his disability.

In *Shirey*, the plaintiffs sued the school district for failure to provide adequate exits for disabled students in the event of an emergency evacuation. 229 F.3d 1143, at *5. The Fourth Circuit did not apply *Sellers* because it involved "physical barriers to public programs." *Id.* No such physical barriers are at issue in this case, further supporting the Board's position that *Sellers* applies.

The issue in this case is not safety broadly (which would fail the *Fry* test because safety is relevant for children outside the school setting and for adults within the school setting) but the propriety of assigning a specific TA to work with a specific disabled student for disability-related reasons and ***through that student's IEP***. (*See* DE 20, ¶¶ 52, 54). The assignment of a TA to a specific student through the student's IEP is squarely a *Sellers* issue and an educational program issue under *Fry*, because only children in schools have IEPs – adults in schools do not and children out of schools do not. Plaintiffs, in substance, complain that the way the Board implemented Matthew's IEP – by assigning an unqualified TA instead of a qualified TA – was inappropriate. That is also a *Sellers* issue. *See Bess v. Kanawha Cty. Bd. of Educ.*, No.

12

2:08CV01020, 2009 WL 3062974, at *10 (S.D. W. Va. Sept. 17, 2009) (suggesting that a failure to properly implement an IEP is a *Sellers* issue); *see also K.D.*, 55 F. Supp. 3d at 790 (noting that failing to provide a required accommodation like a qualified TA is a *Sellers* issue).

In sum, Plaintiffs must have alleged bad faith or gross misjudgment. They have not.

ii.   <u>The application of the *Sellers* standard results in dismissal.</u>

As explained in the Board's opening brief (DE 24), "[i]n the special education context, the standard of proving a § 504 claim is extraordinarily high. . . . The 'bad faith or gross misjudgment' standard is extremely difficult to meet, especially given the great deference to which local school officials' educational judgments are entitled." *Doe v. Arlington Cnty. Sch. Bd.*, 41 F. Supp. 2d 599, 608–09 (E.D. Va. 1999), *aff'd sub nom. Doe ex rel. Doe v. Arlington Cnty. Sch. Bd.*, 210 F.3d 361 (4th Cir. 2000). "Such a high bar in this specific context is justified by the delicate role that courts play in reviewing education decisions." *K.D.*, 55 F. Supp. 3d at 789. However, "[w]hat constitutes bad faith or gross misjudgment in this context has not been well defined." *O.V.*, 2018 WL 2725467, at *23–24 (quoting *K.D.*, 55 F. Supp. 3d at 790).

"Mere negligence does not suffice . . . ." *Id.* at *24 (quoting *Sellers*, 141 F.3d at 529). Instead, the standard requires activity that "depart[s]

13

substantially from accepted professional judgment, practice or standards as to demonstrate that the persons responsible actually did not base the decision on such a judgment." *M.Y. ex rel. J.Y. & D.Y. v. Special Sch. Dist. No. 1,* 544 F.3d 885, 890 (8th Cir. 2008). Further, it must constitute intentional discrimination, *i.e.*, an intent to harm the student. *Doe*, 41 F. Supp. 2d at 609.

Cases involving intentional torts that reach this high bar involve multiple ***similar*** incidents and notice to the school. *See J.S., III by & through J.S. Jr. v. Houston Cnty. Bd. of Educ.*, 877 F.3d 979, 992 (11th Cir. 2017); *M.P. ex rel. K v. Independent School Dist. No. 721,* 326 F.3d 975 (8th Cir. 2003) (allegations that other children shoved child's head into drinking fountain, physically assaulted him, spit on him, cut him, called him names and mother called two to three times per week with no results stated claim for deliberate indifference or bad faith); *compare K.D.*, 55 F. Supp. 3d 782 *with B.S. by & through Stukes v. Parkman*, No. 2:17-CV-489, 2018 WL 10110901, at *6 (E.D. Va. Aug. 2, 2018). Further, the notice must be related to the incident; notice of general unfitness does not alert the Board to the possibility of assault and battery. *J.S.*, 877 F.3d at 992.

The allegations here fail to rise anywhere close to the allegations necessary to state a claim under the *Sellers* standard. Instead, the allegations show that the Board appropriately exercised its educational judgment.

For example, Plaintiffs clearly disagree with the degree of training and qualifications of Mr. Lynch. However, the Board did train Mr. Lynch, as well as ensured he was supervised by a trained special education teacher. (DE 20, ¶¶ 54, 81-82, 84, 86, 90-92, 98, 102, 104; DE 20-2 ¶ 6). This disagreement does not amount to the Board acting with bad faith or gross misjudgment. *See B.M. ex rel. Miller v. S. Callaway R-II Sch. Dist.*, 732 F.3d 882, 888 (8th Cir. 2013) ("Nothing in the record suggests anything more than disagreement between a school and a concerned parent as both struggled to meet [student's] needs. Under these circumstances, the ADA and § 504 do not permit the federal courts to second-guess the educational decisions of school officials. In light of the District's persistent efforts to aid [student], no reasonable jury could conclude that the delays in accommodating him resulted from bad faith or gross misjudgment by the District.") (citation omitted); *D.A. ex rel. Latasha A. v. Houston Indep. Sch. Dist.*, 629 F.3d 450, 455 (5th Cir. 2010) ("[Student]'s mere disagreement with the correctness of the educational services rendered to him does not state a claim for disability discrimination.").

Further, there are no factual allegations that the Board had notice that Mr. Lynch specifically would be likely to assault a student based on their disability, much less Matthew. The conduct here thus cannot amount to bad faith or gross misjudgment.

15

Additionally, immediately following notification of Mr. Lynch's alleged actions, the Board investigated the incident and removed Mr. Lynch from working with Matthew. (DE 20, ¶¶ 6, 13-14, 107-08, 112-13, 116-18, 120-24, 129). That the Board responded in this way defeats any bad faith or gross misjudgment argument. *See I.A. v. Seguin Indep. Sch. Dist.*, 881 F. Supp. 2d 770, 784 (W.D. Tex. 2012) *(*"As [student] and school personnel were faced with new situations and challenges, school personnel attempted to deal with them in good faith. Evaluating these incidents in context, there is no evidence that these occurrences were gross departures from acceptable standards among education professionals. Although mistakes may have been made, they do not rise to the level of bad faith or gross misjudgment.").

       iii.      <u>Even if the lower physical barriers standard applied, Plaintiffs' claims fail.</u>

The primary question in applying the physical barriers standard involves the nexus between the Board's actions and the disabled student's access to the educational program: Did the Board's actions **cause** the denial of access? *See Shirey*, 229 F.3d 1143, at *5. The answer here is squarely "no."

First, Matthew was never unable to access his educational program. Nowhere in the Amended Complaint do Plaintiffs claim that Matthew could not access his educational program. They claim he was not accommodated with a trained and qualified TA, but they never allege why or how that denied

16

Matthew's ability to go to school, or even that it did. In the one instance where Plaintiffs allege facts about any specific TA, *i.e.*, the alleged slap on September 16, 2021,[3] Plaintiffs do not allege that Matthew was thereafter unable to go to school or even class. (*See* DE 20, ¶¶ 119-20 (alleging Matthew went to school following the September 16, 2021 incident)); *contrast L.P.*, 2022 WL 2813038, at *1-5 (finding that plaintiffs alleged a policy or custom of illegal seclusion and restraint of the student in question, along with other students, where the student in question was subjected to unlawful seclusion and restraint as punishment for significant amounts of time over ***at least twelve separate instances***).

Second, even if Plaintiffs had alleged Matthew was unable to go to school/class as a result of the Board's alleged failure to train or supervise Matthew's TAs, the allegations of the Amended Complaint reveal that the Board's actions regarding training and supervision did not cause the events of September 16, 2021. The Amended Complaint alleges that even a certified and qualified special education teacher with CPI training, *i.e.*, Ms. Cobb, could not prevent Matthew's reactions on September 16, 2021. (*Id.* at ¶ 101). Ms. Cobb

---

[3] In reaching its conclusions about the Board's alleged failure to accommodate, the Recommendation erroneously relies on vague and conclusory allegations insufficient to state a plausible claim for relief under the *Twombly*/*Iqbal* progeny. (DE 30, at 16-17).

was allegedly involved in the training, and responsible for the supervision, of Mr. Lynch on September 16, 2021. Training and supervision were not the issues giving rise to the events of September 16, 2021.

**B.    The Recommendation Erroneously Concluded that Matthew Was Discriminated Against Because of his Disability.**

In concluding that the Amended Complaint states a claim for violations of the ADA and Section 504, the Recommendation also stated the incorrect causation standard for ADA claims. (DE 30, at 17-18). Nevertheless, the Recommendation only analyzed the ADA and Section 504 claims under the "solely because of" standard applicable to Section 504 claims. (*Id.* at 18-24). In doing so, the Recommendation minimized the significant burden plaintiffs carry when bringing Section 504 claims and erroneously concluded Plaintiffs stated a claim here.

i.    <u>The Recommendation stated the incorrect causation standard for ADA violations.</u>

The Recommendation applied the incorrect legal standard for ADA claims. (DE 30, at 17-18). Specifically, the Recommendation incorrectly relied on flawed Fourth Circuit dicta and non-binding district court decisions for the

18

proposition that the ADA has a "motivating factor" causation standard. (DE 30, at 17-18).

Even if the ADA causation standard is not the "solely" test of Section 504, which the Board maintains,[4] "the ADA's text calls for a 'but-for' causation standard." *Gentry v. E. W. Partners Club Mgmt. Co. Inc.*, 816 F.3d 228, 235 (4th Cir. 2016); *see also Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, 133 S. Ct. 2517, 2533, 186 L. Ed. 2d 503 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e–2(m)."); *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 129 S. Ct. 2343, 174 L.Ed.2d 119 (2009) (holding "but-for" causation required under ADEA); *accord Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1212 n. 6 (11th Cir. 2008) (noting "the ADA requires the . . . 'but for' standard of causation".;

Further, the Supreme Court has held that, unless Congress has amended a statute to explicitly change the causation standard to a motivating factor

---

[4] *Shirey*, 229 F.3d 1143, cited three times by the Recommendation, also supports the Board's interpretation of case law holding that discrimination under either Section 504 or the ADA must be based ***solely*** on the individual's disability. *Id.* at *5 ("To establish a violation of either [the ADA or Section 504], a plaintiff must prove: (1) that she has a disability; (2) that she is otherwise qualified for the benefit or program in question, and (3) that she was excluded from the benefit or program due to discrimination ***solely*** on the basis of the disability." (emphasis added) (citation omitted)).

19

test, as was done with Title VII, then a more exacting causation standard is required, *i.e.*, at least the "default" rule of "but-for" causation. *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 332, 338, 140 S. Ct. 1009, 1014, 1018, 206 L. Ed. 2d 356 (2020). In *Comcast*, the Court analyzed the statutory history of § 1981 and Title VII, and concluded that the Congressional amendment to Title VII to add the motivating factor test, when compared with the failure to similarly amend § 1981 two years later, meant that Congress did not intend to extend the motivating factor test to § 1981. *Id.* at 338. Similar to § 1981 being amended after Title VII was amended to add the motivating factor test, the ADA was enacted ***after*** the Title VII amendment. "But nowhere in [the ADA] did Congress so much as whisper about motivating factors." *Id.* Therefore, the motivating factor test ***cannot*** apply to ADA causation. *See Arora v. Nav Consulting Inc.*, No. 21 C 4443, 2022 WL 7426211, at *3 (N.D. Ill. Oct. 13, 2022) (noting that *Comcast* abrogates the motivating factor precedent for ADA claims).

ii.   <u>Plaintiffs do not allege facts sufficient to show but-for causation.</u>

The Section 504 "solely because of" causation standard is a higher burden than the ADA's but-for causation standard. Therefore, if Plaintiffs

20

failed to allege facts sufficient to support a but-for discrimination claim, then both their ADA and Section 504 claims are defeated.

"Under this [but-for] standard, a plaintiff must demonstrate that, but for the defendant's unlawful conduct, its alleged injury would not have occurred." *Comcast Corp.*, 589 U.S. at 331, 140 S. Ct. at 1014. "In other words, a but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause." *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 656, 140 S. Ct. 1731, 1739, 207 L. Ed. 2d 218 (2020).

The thing to change in this case is Matthew's disability: If Plaintiffs failed to allege facts to show that these events (assuming for this purpose that the events were adverse at all) would not have happened if Matthew did not have a disability, then Plaintiffs disability discrimination claims fail.

Plaintiffs have not met their burden. Plaintiffs have not plausibly alleged that, for example:

- Jeffrey Lynch would not have slapped Matthew if Matthew did not have a disability;

- The Board would have hired qualified, trained, and prepared TAs if Matthew did not have a disability;

- The Board would have had qualified, trained, and prepared TAs working with Matthew if Matthew did not have a disability; or

21

- The Board chose not to train Mr. Lynch because Matthew has a disability.

Therefore, Plaintiffs have failed to allege but-for causation.

Further, regardless of the causation standard applied, in the case of discrimination, the action taken must be "***intentionally*** treat[ing] a person worse because of" their protected characteristic. *Bostock*, 590 U.S. at 658 (emphasis added). As discussed further below, there are no factual allegations that the Board intentionally treated Matthew worse than other students because of his disability. There are no allegations that would support a conclusion that the Board's assigning Mr. Lynch as Matthew's TA was discrimination on the basis of Matthew's disability, especially where the Board had no knowledge or even indication that Mr. Lynch would harm Matthew. There are no allegations that would support a conclusion that the Board's decisions to hire and place allegedly untrained TAs were discrimination on the basis of Matthew's (or any other student's) disability. There are no allegations that could support a conclusion that Matthew's classroom placement was discrimination on the basis of Matthew's disability.

At best, the Recommendation concludes that Plaintiffs have alleged negligence. (*See* DE 30, at 19-20 (listing things the Board "fail[ed]" to do which "subject[ed]" Matthew to harm)). Negligence cannot make either an ADA or

22

Section 504 discrimination claim. Therefore, the Recommendation's conclusion that Plaintiffs have stated a disability discrimination claim is error.

## C. The Recommendation Applied the Incorrect Legal Standard to Plaintiffs' Compensatory Damages Claim.

The Recommendation failed to determine whether the deliberate indifference standard applied to Plaintiffs' request for compensatory damages. (DE 30, at 21-22). The Recommendation then applied the deliberate indifference standard but erroneously found that Plaintiffs' allegations in the Amended Complaint rose to the level of deliberate indifference. (*Id.* at 22-24). However, to the extent that hiring untrained TAs constitutes a violation of disability discrimination laws,[5] which the Board denies, there are no allegations that the Board consciously chose to ignore any risk related to Mr. Lynch working with Matthew. Contrary to the Recommendation's conclusion, the deliberate indifference standard does apply to Plaintiffs' request for compensatory damages, and Plaintiffs failed to meet that standard.

To state a claim for compensatory damages in the disability discrimination context, plaintiffs must allege not only bad faith or gross misconduct but also deliberate indifference. *Koon v. North Carolina*, 50 F.4th 398, 400 (4th Cir. 2022). "[T]he deliberate-indifference standard starts with

---

[5] Plaintiffs failed to argue that disagreements about placement decisions constitute deliberate indifference. (*See generally* DE 26).

determining whether there was – objectively speaking – an ongoing or likely violation of some federal right, and then moves on to determining whether a defendant had the appropriate mental state – subjectively speaking – toward that federal-rights violation." *Id.* at 404. In other words, a reviewing court must "look first to whether there was a likely or ongoing violation of federal rights. Only then may [it] move on to the mental state of deliberate indifference, which requires knowledge of a substantial risk of a deprivation of those rights and a failure to act to resolve that risk." *Id.* at 405.

Further, the violation must be intentional. As the Fourth Circuit explained:

> Simple failure to comply with the law is not deliberate indifference. It is not enough simply to point to what could or should have been done. That is the language of negligence. Deliberate indifference requires a "deliberate or conscious choice" to ignore something. That is more like criminal-law recklessness than mere negligence. An official must know of the dangers to federal rights and nonetheless disregard them. The official must know of the facts from which a federal-rights violation could be inferred ***and then actually draw the damning inference***.

*Id.* at 406-07 (citations omitted) (emphasis added).

In reaching its conclusion, the Recommendation relies on implausibly alleged, vague, and conclusory allegations that there was a hiring practice of the Board for untrained and unqualified TAs. (DE 30, at 23). "A pleading that

24

offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s] devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1959 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1955). Plaintiffs' conclusions are exactly the sort of "naked assertion" and "formulaic recitation" without "further factual enhancement" expressly barred by the United States Supreme Court. Plaintiffs have alleged no facts supporting their contention that this was occurring. There are no facts alleged to show an ongoing violation of Matthew's ADA rights.

Further, even if the Board generally hired untrained and unqualified TAs, the Amended Complaint alleges that Mr. Lynch was both trained and supervised by the person who Plaintiffs hold out as incredibly qualified, Ms. Cobb. (DE 20, at ¶¶ 54, 81-82, 86, 91-92; DE 20-2 ¶ 6). The Board ***regarded*** the risk, and the Board's purported hiring practice was not at play regarding Mr. Lynch, per Plaintiffs' own allegations. Although Plaintiffs may have alleged that Mr. Lynch could have received more training before working with Matthew, that claim is one of negligence, not deliberate indifference. (*See* DE 20, ¶¶ 166-67).

The Recommendation's reliance on Plaintiffs' allegations that the Board "did nothing to prevent a violation of [Matthew's] rights from occurring" (DE 30, at 23) was misplaced. Plaintiffs alleged the Board did address Ms. Cobb's concerns. Plaintiffs' allege that, before Mr. Lynch worked with Matthew, Ms. Cobb complained to the Board that the TAs assigned to her students were not trained. (DE 20-2, ¶¶ 24-25). ***Then*** the Board provided training to Mr. Lynch, both before he began working with Matthew and in real time as he was working with Matthew. (*See, e.g.*, DE 20, ¶¶ 86 (alleging the Board trained Mr. Lynch by providing "background on Matthew's intellectual and developmental disabilities" before he worked with Matthew), 91 (alleging the Board trained Mr. Lynch by Ms. Cobb "show[ing Mr.] Lynch Matthew's classroom, including certain padded and calming areas used for Matthew's classroom instruction" and "inform[ing Mr.] Lynch that Matthew's autism can manifest itself, at times, in aggressive behavior, including physical manifestations" before he worked with Matthew), 92 (alleging the Board trained Mr. Lynch by "Ms. Cobb review[ing] Matthew's behavior intervention plan with [Mr.] Lynch" before he worked with Matthew), 102 (alleging the Board provided on-the-job training by "Ms. Cobb instruct[ing Mr.] Lynch to take Matthew for a walk outside of the bathroom" to calm Matthew down), 104 (alleging the Board provided on-the-job training by Ms. Cobb providing "instructions to back away from Matthew"

26

"[w]hen Matthew became agitated")). Finally, the Board removed Mr. Lynch from the situation the moment it received notice of the alleged slap. (*Id.* at ¶¶ 107, 122).

Plaintiffs have failed to pass the first hurdle that there was a likely or ongoing violation of Matthew's rights. Further, Plaintiffs have failed to show that the Board failed to act on the knowledge it had. Indeed, Plaintiffs have alleged that the Board did act – it trained Mr. Lynch and ensured his supervision.

## III.   The Board's Motion to Dismiss the Amended Complaint Is Not Moot.

On August 28, 2024, in response to the Recommendation's conclusions, Plaintiffs filed a motion to amend the Amended Complaint and a proposed Second Amended Complaint. (DE 32, DE 32-1). The only differences between the Amended Complaint and the Second Amended Complaint are that the Second Amended Complaint (1) substitutes Matthew as the real party in interest with his parents as his next friends; and (2) clarifies that the punitive damages claim is against Jeffrey Lynch, not the Board. (DE 32, ¶¶ 5-6).

The substantive allegations will not change if the Second Amended Complaint is accepted. Thus, as to the substance of the claims, Plaintiffs' request to amend is futile, and leave to amend need not be granted. *See Davis*

*v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980). The Board will respond in opposition to the motion for leave to amend.

Further, even if the Court grants Plaintiffs' motion to amend the Amended Complaint, the Motion to Dismiss should not, as a result, be deemed moot, because it is, in part, premised on the unchanging substantive allegations of the Amended Complaint. Therefore, the Court should not delay in determining that the Amended Complaint fails to state a claim against the Board. It is clear by the face of both the Amended Complaint and Second Amended Complaint that Plaintiffs' claims against the Board should be dismissed with prejudice.

## CONCLUSION

For the reasons stated here and in the Board's briefing on the Motion to Dismiss, Plaintiffs' claims against the Board should be dismissed.

This the 29th day of August, 2024.

BROOKS, PIERCE, McLENDON,
  HUMPHREY & LEONARD, L.L.P.

By: <u>S. Collins Saint</u>
  Gary S. Parsons
N.C. State Bar No. 7955
   S. Collins Saint
N.C. State Bar No. 52586
*Attorneys for Defendant Moore*
*County Schools Board of Education*
Suite 2000 Renaissance Plaza
230 North Elm Street (27401)
Post Office Box 26000
Greensboro, NC 27420-6000
Telephone:  (336) 373-8850
Facsimile:   (336) 378-1001
Email: <u>gparsons@brookspierce.com</u>
Email: <u>ssaint@brookspierce.com</u>

## <u>CERTIFICATE OF WORD COUNT</u>

Pursuant to Local Rule 7.3(d)(1), the undersigned counsel certifies that the foregoing objection to the magistrate judge's recommendation complies with Local Rule 72.4, and does not exceed 6,250 words, excluding the case caption, table of contents, table of authorities, signature lines, and certificate of service.

/s/ S. Collins Saint
S. Collins Saint

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will serve all registered users. I also certify that I emailed Defendant Jeffrey Lynch at jll213@aol.com the foregoing document.

This the 29th day of August, 2024.

/s/ S. Collins Saint
S. Collins Saint