# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CHRISTOPHER M. WELLS and <br> LESLIE M. WELLS, on behalf of <br> their son, MATTHEW WELLS, | ) <br> ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | |
| v. | ) <br> ) | 1:23CV412 |
| THE MOORE COUNTY SCHOOLS <br> BOARD OF EDUCATION and <br> JEFFREY LEE LYNCH, | ) <br> ) <br> ) <br> ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on two motions: a Motion filed by Defendant Jeffrey Lee Lynch ("Mr. Lynch") entitled "Defendant Jeffrey Lee Lynch's Motion to Dismiss Amended Complaint – Federal Rule of Civil Procedure (FRCP) 12(b)(1) – Court's Lack of Subject Matter Jurisdiction" (Docket Entry 38) ("Mr. Lynch's Motion to Dismiss Amended Complaint"), and Mr. Lynch's Motion entitled "Defendant Jeffrey Lee Lynch's Motion to Dismiss Second Amended Complaint" (Docket Entry 41) ("Mr. Lynch's Motion to Dismiss Second Amended Complaint"). Plaintiffs Christopher M. Wells and Leslie M. Wells ("Plaintiffs"), on behalf of their son, Matthew Wells ("Matthew"), have filed a Response in opposition to both motions (Docket Entry 43) and Mr. Lynch has filed a Reply thereto (Docket Entry 44). For the following reasons, the undersigned recommends that both Mr. Lynch's Motion to Dismiss Amended Complaint and Mr. Lynch's Motion to Dismiss Second Amended Complaint be denied.

1

## I. BACKGROUND

Plaintiffs brought this action against Defendants the Moore County Schools Board of Education ("the Board") and Mr. Lynch on behalf of their son Matthew who they allege was assaulted by Mr. Lynch at Pinecrest High School ("Pinecrest")[1] in Southern Pines, North Carolina, on September 16, 2021.[2] (*See generally* Second Amended Complaint, Docket Entry 40 ("Second Am. Compl.").) More specifically, the Second Amended Complaint alleges that during the relevant period, Matthew was a 17-year-old non-verbal autistic student with an intellectual disability attending Pinecrest. (*Id.* ¶¶ 2, 21, 24, 46, 49.) While at Pinecrest, Matthew had an Individual Education Program ("IEP"), and "participated in Pinecrest's Extended Content Standard Course of Study, which is a program intended to serve students who, as a result of their disabilities, exhibit behaviors that require the most behavioral support." (*Id.* ¶¶ 27-28.) In educational settings, Matthew required "a safe and therapeutic environment free from the threat of physical harm or restraint[,]" thus he was assigned a one-on-one teaching assistant ("TA"), who was under the guidance of a classroom teacher. (*Id.* ¶¶ 53, 54.)

In mid-September 2021, Sierra Cobb ("Ms. Cobb") was Matthew's teacher and Mr. Lynch was his TA. (*Id.* ¶ 56.) Mr. Lynch, having just begun employment as a TA at Pinecrest, received information on Matthew's intellectual and developmental disabilities. (*Id.* ¶¶ 85-86.) On September 10, 2021, Mr. Lynch informed the director of Pinecrest's Exceptional

---

[1] Pinecrest is in the Moore County Schools district. (*See* Second Am. Compl. ¶¶ 29-32).

[2] The Amended Complaint and the Second Amended Complaint are nearly identical. The only differences between the two are that in the Second Amended Complaint, Plaintiffs identify themselves as Matthew's "next of friend and guardians," and that in the Second Amended Complaint punitive damages are only sought from Mr. Lynch instead of from both he and the Board. (*Compare* Docket Entry 20 *with* Docket Entry 40; *see also* Docket Entry 30 at 11-13, 24-25.)

Children's Program of his lack of background and training to work with Matthew; however, he remained assigned to do so and reported to Matthew's classroom on September 16, 2021. (*Id.* ¶¶ 87-88, 90.)

Ms. Cobb showed Mr. Lynch Matthew's classroom, including certain padded and calming areas used for Matthew's classroom instruction. (*Id.* ¶ 91.) Ms. Cobb informed Mr. Lynch that "Matthew's autism can manifest itself, at times, in aggressive behavior, including physical manifestations." (*Id.*) Ms. Cobb and Mr. Lynch reviewed Matthew's intervention plan. (*Id.* ¶ 92.) However, Mr. Lynch, unaware of how to interact with Matthew, was uncomfortable after beginning to work with him, and in turn, caused Matthew to become agitated. (*See id.* ¶¶ 93-94.) Plaintiffs allege that, at one point, "[Mr.] Lynch pushed Matthew into the padded area of the classroom." (*Id.* ¶ 95.) Matthew was frightened by Mr. Lynch's actions, could not verbally advocate for himself, and responded by throwing items in the classroom. (*Id.* ¶¶ 96-97.)

Mr. Lynch subsequently spoke with the Program Director, expressing "that he was not adequately trained and did not want to continue working with Matthew." (*Id.* ¶ 100.) After being instructed to continue working with Matthew, Mr. Lynch returned to the classroom, which was in disarray from the items thrown by Matthew. (*Id.* ¶¶ 100-01.) Ms. Cobb then instructed Mr. Lynch "to take Matthew for a walk" and "to help keep Matthew calm" by using a sensory compression blanket, which Mr. Lynch had not been trained to use. (*Id.* ¶ 102.) As a result, "Matthew lost his balance while using the blanket and inadvertently knocked [Mr.] Lynch into a wall." (*Id.*) After returning to the classroom, Matthew was again agitated, and Plaintiffs allege that

> [Mr.] Lynch—instead of employing calming techniques with Matthew, and while ignoring Ms. Cobb's instructions to back away from Matthew—picked up a beanbag chair and used it to aggressively push Matthew around the classroom and then picked

3

> up a classroom chair and aggressively thrust the chair's metal legs at Matthew as if Matthew was an animal to be tamed, repeatedly yelling, "get back beast!" at Matthew all the while. While doing so, and while flustered, [Mr.] Lynch expressed to Ms. Cobb that he did not know how to handle the situation.
>
> Shortly thereafter, [Mr.] Lynch approached Matthew and struck Matthew with an open hand across Matthew's face and neck, knocking Matthew to the ground and causing him to hold his face and neck in pain. [Mr.] Lynch then stood over Matthew, looking down at him.

(*Id.* ¶¶ 104-05.) Plaintiffs allege that after the incident, Matthew laid on the floor crying, Ms. Cobb ran for help, and Mr. Lynch ran out the classroom. (*Id.* ¶¶ 106-09.)

Plaintiffs allege that Pinecrest's school resource officer responded to Ms. Cobb and that the school's principal and two other assistant principals came to the classroom shortly thereafter. (*Id.* ¶¶ 108, 112.) After Ms. Cobb explained what happened, the principal first suggested that Ms. Cobb "retract her assault accusation against [Mr.] Lynch." (*Id.* ¶¶ 112-13.) Plaintiffs further allege that "administration immediately went to work in seeking to conceal what happened to Matthew, knowing that Matthew could not verbalize what had occurred." (*Id.* ¶ 115.) Plaintiffs go on to allege that "no member of Pinecrest's administration sought to meaningfully examine Matthew's injury, assess his medical needs, or offer him comfort." (*Id.* ¶ 114.) When Matthew was picked up from school that day, the principal only indicated "that there was 'an incident' between Matthew and his TA, but that 'everything was fine.'" (*Id.* ¶ 116.)

Plaintiffs allegedly sought additional information the next day, but were told only that Mr. Lynch would no longer be working with Matthew. (*Id.* ¶¶ 120-22.) Two weeks later, Plaintiffs learned of the alleged assault by Mr. Lynch after being contacted by the Moore County Schools Police Department, although no details were given. (*Id.* ¶ 123.) Plaintiffs

then contacted Ms. Cobb seeking further information, who told them that she had been instructed not to speak to them about the incident. (*Id.* ¶ 124.) "Ms. Cobb eventually told the Wells family that [Mr.] Lynch had struck Matthew." (*Id.*) Mr. Lynch returned to school as a TA in another Exceptional Children's Program classroom on September 17, 2021, but voluntarily resigned from his position that day. (*Id.* ¶¶ 128-29.) With Plaintiffs' support, criminal charges for assault and battery were filed by the Moore County District Attorney against Mr. Lynch for the September 16, 2021, incident involving Matthew. (*Id.* ¶ 131.) Ms. Cobb resigned from her position at Pinecrest on September 27, 2021. (*Id.* ¶ 130.)

Plaintiffs allege that Matthew has been traumatized as a result of the incident, that he has "returned home with inexplicable bruises on several occasions" before and after the assault, and that ultimately Matthew has been forced to attend a school in another jurisdiction due to the Board's failure to meet its obligations to Matthew. (*Id.* ¶¶ 132-40.)

Plaintiffs allege two claims—violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA") and violation of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*—against the Board only. (*Id.* ¶¶ 141-176.) The Board moved to dismiss said claims (Docket Entry 23; *see also* Docket Entry 24); this Court recommended that said motion should be granted as it relates to Plaintiffs' claim for punitive damages, but that it should be otherwise denied (Docket Entry 30);[3] said recommendation was subsequently adopted in an order by District Judge Thomas D. Schroeder (Docket Entry 39). *Wells v. Moore Cnty. Sch.*, No. 1:23CV412, 2024 WL 3845347, at *1 (M.D.N.C. Aug. 15, 2024), *report and recommendation adopted sub nom. Wells v. Moore Cnty. Sch. Bd. of Educ.*, No. 1:23CV412, 2024 WL 4344948 (M.D.N.C. Sept. 30, 2024).

---

[3] Mr. Lynch filed a partial objection to said recommendation. (Docket Entry 34.)

In addition to those two claims, Plaintiffs bring three claims against Mr. Lynch only, alleging that he is liable for assault, battery, and false imprisonment as a result of the September 16, 2021, incident. (*Id.* ¶¶ 186-227.) For each of the three claims, Plaintiff alleges that that as a direct and proximate result of the tort alleged, "Matthew has been damaged in an amount to be established at trial." (*Id.* ¶¶ 205, 217, 227.) Mr. Lynch denies Plaintiffs' allegations. (*See generally* Docket Entry 22; *see also* Docket Entry 34 at 1-2.)[4]

## II. DISCUSSION

### a. Summary of the Parties' Arguments

As a threshold matter, the undersigned notes that Mr. Lynch's Motion to Dismiss Amended Complaint and Mr. Lynch's Motion to Dismiss Second Amended Complaint are essentially identical, with only minor differences between the two that do not materially affect this Court's analysis of the arguments presented therein. (*Compare* Docket Entry 38 *with* Docket Entry 41; *see also* Docket Entry 43 at 1 n.1.) The latter addresses the Second Amended Complaint, which is the operative pleading in this action, and the undersigned will therefore recommend that the former be denied as moot. *James v. Bartow Cnty., Georgia*, No. 1:16-CV-01381-WSD, 2017 WL 748738, at *3 n.6 (N.D. Ga. Feb. 27, 2017) (unpublished), *aff'd*, 798 F. App'x 581 (11th Cir. 2020); *Santos v. Keenan*, No. 17-CV-0984 LJV-HKS, 2020 WL 2859202, at *3 (W.D.N.Y. Feb. 6, 2020) (unpublished), *report and recommendation adopted*, No. 17-CV-984, 2020 WL 1025189 (W.D.N.Y. Mar. 3, 2020). Accordingly, the undersigned will proceed with its analysis as to Mr. Lynch's Motion to Dismiss Second Amended Complaint (hereinafter "Motion to Dismiss").

---

[4] Unless otherwise noted, all citations herein refer to the page numbers at the bottom right-hand corner of the documents as they appear in the Court's CM/ECF system.

The Motion to Dismiss seeks to dismiss Plaintiffs' three claims against Mr. Lynch for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"). Specifically, Mr. Lynch argues that

> [the ADA] is a civil rights law - Not a criminal statute. Thus, the primary legal repercussions of [Plaintiffs'] un-proven allegations of assault, battery, [and false imprisonment] against Defendant Mr. Lynch would occur at the North Carolina (NC) State level of court system. [Plaintiffs'] un-substantiated and un-proven allegations of 16 September 2021 regarding assault, battery, [and false imprisonment], (allegedly involving Defendant Mr. Lynch) are violations of North Carolina (NC) State criminal statutes. Jurisdiction of NC State statutes therefore resides with NC State courts.

(Docket Entry 41 ¶ 5 (emphasis removed).) Mr. Lynch goes on to argue that

> for Federal Court jurisdiction to apply in this case, [Plaintiffs'] allegations of assault, battery, [and false imprisonment] against Defendant Mr. Lynch would have needed to occur either: 6.a. On a Federal Installation or Property (18 U.S.C. § 113); and/or, 6.b. Involve a victim that is a Federal Officer or Federal Employee performing their duties (18 U.S.C. § 111); and/or, 6.c. Involve citizens of separate U.S. States (known as "diversity of citizenship") [(28 U.S.C. § 1332)].

(*Id.* ¶ 6 (emphasis removed).) Mr. Lynch concludes that because none of these three criteria are met, this Court lacks subject jurisdiction to hear the action against him and that it should be dismissed. (*Id.* ¶¶ 7-11.) Mr. Lynch notes that on May 25, 2022, he was found not guilty in state criminal court "regarding the allegations contained in [Plaintiffs'] original and twice amended complaints." (*Id.* ¶ 7.d. (emphasis removed).) Notably, he argues that the claims against him "belong under the NC State Courts' jurisdiction" and that Plaintiffs' "allegations of assault, battery, [and false imprisonment] against Defendant Mr. Lynch, do not concern Federal Law, but rather State of North Carolina criminal statutes." (*Id.* ¶¶ 8, 10.)[5]

---

[5] Mr. Lynch argues that "The applicable statute is North Carolina General Statute § 14-32.1(f)[.]" (*Id.* ¶ 7.d.1.) Plaintiffs do not make any reference to § 14-32.1(f) in their filings.

7

Case 1:23-cv-00412-TDS-JLW    Document 46    Filed 05/08/25    Page 7 of 17

In their Response, Plaintiffs contend that an additional basis beyond the three argued by Mr. Lynch exists for this Court to exercise its jurisdiction over the instant action. (*See* Docket Entry 43 at 3-5.) Specifically, Plaintiffs argue that this Court has federal-question jurisdiction over the claims they bring against the Board pursuant to Title II of the ADA and the Rehabilitation Act, because they are "laws of the United States over which district courts have original jurisdiction" as contemplated by 28 U.S.C. § 1331. (*See* Docket Entry 43 at 4.)

Plaintiffs further argue that this Court has supplemental jurisdiction over the state-law claims they bring against Mr. Lynch, because said claims derive from a common nucleus of operative fact and are so related to the federal claims against the Board conferring original jurisdiction that they "form part of the same case or controversy" as contemplated by 28 U.S.C. § 1367(a). (Docket Entry 43 at 4.) Moreover, Plaintiffs argue that factually similar previous decisions issued from this Court support a finding of supplemental jurisdiction, since the state law claims against Mr. Lynch "appear to overlap substantially" with the federal law claims against the Board. (*Id.* at 4-5 (citing *Shaughnessy v. Duke Univ.*, No. 1:18-CV-461, 2018 WL 6047277, at *6 (M.D.N.C. Nov. 19, 2018) (unpublished); *Sciacca v. Durham Cnty. Bd. of Educ.*, 509 F. Supp. 3d 505, 514 (M.D.N.C. 2020)).)

In his Reply, Mr. Lynch references case law pertaining to federal-constitutional substantive due process. (Docket Entry 44 ¶¶ 1, 9-11, 13.d.) Mr. Lynch reiterates his position that this Court lacks jurisdiction over the claims against him because federal jurisdiction can be conferred by only the three bases (18 U.S.C. § 113, 18 U.S.C. § 111, "and/or" 28 U.S.C. § 1332) argued in his Motion to Dismiss. (*Id.* ¶¶ 2, 5, 13, 14-15.) Mr. Lynch further argues that Plaintiffs' allegations upon their "information and belief" are not facts, that "under the

8

guise of their 'information and belief,' they assert these allegations as fact[,]" and he disputes the veracity of said allegations. (*Id.* ¶¶ 4, 4.a.) Mr. Lynch argues that Plaintiffs' allegations are made without accompanying "proof" and "evidence[.]" (*Id.* ¶¶ 4.a, 4.b, 4.c., 6, 7.)

Mr. Lynch then argues, in reference to Plaintiffs' allegation that his choice to sit in a chair over Matthew "caused Matthew to feel threatened and to become agitated and physically aggressive" (Second Am. Compl ¶ 94), that "no reasonable person could expect anyone to realize that the act of sitting in a chair in a school classroom would cause a student or any other person to 'feel threatened and become physically aggressive.'" (Docket Entry 44 ¶ 4.b.1. (emphasis removed).) Mr. Lynch further contends the following:

> Except for Defendant Mr. Lynch, none of the parties to this claim were present in the Pinecrest High School classroom on 16 September 2021. I find it difficult for Plaintiffs (or anyone, for that matter) to state what they know happened, when they were not even there. Thus, Plaintiffs do not provide any credible evidence of their allegations of an assault, battery, [or false imprisonment] taking place against [Matthew] on 16 September 2021 involving Defendant Mr. Lynch. …
>
> Of persons who were actually present at Pinecrest High School on 16 September 2021, a sworn peace officer, SRO of the county schools police department stated on the witness stand, under oath, in a court of law, that he "… saw absolutely no evidence that indicated any assault took place," against [Matthew], and Defendant Mr. Lynch. …
>
> North Carolina State trial in May 2022 witness sworn testimony, under oath, stated the only indications of something wrong on 16 September 2021 with [Matthew], was he came home and napped longer than usual. There was no testimony of any signs of a physical assault whatsoever. … There were no marks, abrasions, bruising, no physical problems requiring any medical attention whatsoever, no need of medical treatment, and no physical injuries whatsoever[.] …
>
> In short, Defendant Mr. Lynch committed no assault, battery, [or false imprisonment], against [Matthew] on 16 September 2021 at Pinecrest High School - and real facts (not Plaintiffs' "information and belief") bear this out.

9

(*Id.* ¶¶ 4.c.-4.f. (emphasis removed); *see also id.* ¶ 7.) Mr. Lynch attempts to distinguish the instant action from *Sciacca*, 509 F. Supp. 3d 505, by arguing that here Plaintiffs do not allege any criminal conspiracy, do not allege any illegal payments made to commit a crime, and that there were "no physical or medical injuries to [Matthew]." (Docket Entry 44 ¶¶ 8.a.1., 9.a.) Mr. Lynch also argues that "Plaintiffs' claims for punitive damages against Defendant Mr. Lynch should be dismissed" because "punitive damages may not be awarded in private suits brought under the [ADA] or Section 504 of the Rehabilitation Act[.]" (*Id.* ¶ 12.) Ultimately, Mr. Lynch requests that the instant action be dismissed with prejudice. (*Id.* ¶¶ 13, 15, 16.b.)

### b. Several of Mr. Lynch's Arguments are Misplaced and Thus Fail

At the outset, the undersigned refutes several misplaced arguments made by Mr. Lynch. In doing so, the court is mindful that because Mr. Lynch appears *pro se*, his filings "[are] to be liberally construed," and "must be held to 'less stringent standards than formal pleadings drafted by lawyers.' " *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

First, Mr. Lynch has not filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and so the sufficiency of the Second Amended Complaint is not at issue here. *Cf. Edwards v. CSX Transportation, Inc.*, 983 F.3d 112, 119 (4th Cir. 2020). Even if it was, neither proof nor evidence is required at the motion-to-dismiss stage. *See, e.g.*, *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir.2009); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, at this stage, well-pleaded allegations in a plaintiff's complaint are taken as true and all reasonable factual influences are drawn in the plaintiff's favor; so long as said allegations are plausible and more than

speculative, they are sufficient. *See id.* Therefore, taking Plaintiffs' allegations as true and drawing all reasonable inferences in their favor, the undersigned finds that the facts Plaintiffs allege against Mr. Lynch are sufficiently plausible to survive Mr. Lynch's motion to dismiss, even if, construing his filings generously, he had made said motion pursuant to Rule 12(b)(6).

> Second, the Court rejects [Mr. Lynch's] motion to the extent it seeks dismissal because [Plaintiffs] base[ ]some of [their] allegations on "information and belief." A plaintiff is generally permitted to plead facts based on "information and belief" if such plaintiff is in a position of uncertainty because the necessary evidence is controlled by the defendant. *See Raub v. Bowen*, 960 F.Supp.2d 602, 615 (E.D.Va. 2013) (noting that although "information and belief" pleadings are "tenuous at best," such practice is permitted under Rule 8(a) when relying "on second-hand information to make a good-faith allegation of fact"); *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) ("The *Twombly* plausibility standard … does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant") (internal quotation marks and citation omitted); 2–8 *Moore's Federal Practice* § 8.04[4] (3d ed.) ("Nothing in the *Twombly* plausibility standard prevents a plaintiff from pleading on information and belief.").

*Ridenour v. Multi-Color Corp.*, 147 F. Supp. 3d 452, 456 (E.D. Va. 2015). Here, Plaintiffs allege that Matthew is nonverbal (Second Am. Compl. ¶ 90) and specifically unable to verbally communicate about the alleged incident on September 16, 2021 (*see id.* ¶ 114). Furthermore, Plaintiffs were not present for said incident, and although they include a Declaration from Ms. Cobb that contains a statement that Mr. Lynch "improperly used physical force against Matthew Wells in my classroom on September 16, 2021" (Docket Entry 40-2 ¶ 25) said Declaration and the Second Amended Complaint do not explicitly specify whether Ms. Cobb witnessed the incident firsthand (*see generally id.*; *see also* Second Am. Compl. ¶¶ 90-111; Docket Entry 44 ¶¶ 4.c.-4.d.).

Accordingly, since Plaintiffs allege that he assaulted, battered, and falsely imprisoned Matthew, and since Mr. Lynch alleges that "[e]xcept for Defendant Mr. Lynch, none of the parties to this claim were present in the Pinecrest High School classroom on 16 September

11

2021[,]" it is plausible that the pertinent facts here are peculiarly within the possession and control of Mr. Lynch, and Plaintiffs' pleadings on information and belief are thus permitted at this juncture by the applicable Federal Rules of Civil Procedure. *See Ridenour*, 147 F. Supp. 3d at 456-57 ("Accordingly, drawing on this Court's 'judicial experience and common sense,' … and considering the factual allegations located throughout the complaint, the Court finds that [the relevant claims] survive [the defendant's motion to dismiss] even though the allegations against [said defendant] are strongly contested."); *see also* Fed. R. Civ. P. 8(d); Fed. R. Civ. P. 12(b)(6).

Next, Mr. Lynch's attempt to rely on case law pertaining to federal-constitutional substantive due process is inapposite and unavailing here because no such claim against him has been brought by Plaintiffs. (*See generally* Second Am. Compl.) Similarly, Mr. Lynch's contentions that the instant action has already been adjudicated in state criminal court and that Plaintiffs' claims against him "belong under the NC State Courts' jurisdiction" fare no better. *See Hussey v. Cheek*, 31 N.C. App. 148, 149, 228 S.E.2d 519, 520-21 (1976) ("The plaintiff in this civil action for personal injury resulting from assault and battery by the defendant is not estopped by the acquittal of the defendant in the criminal prosecution for the same alleged assault. This same result may be reached in the present case by focusing on the burdens of proof in the two trials. … In no way can the State's failure to carry its burden in the criminal case be dispositive of the defendant's burden in the civil case. When the burden of proof at the second trial is less than at the first, the failure to carry that burden at the first trial cannot raise an estoppel to carrying the lesser burden at the second trial."); *Relationship between civil actions and criminal prosecutions*, 8 American Law of Torts § 26:3 (similar, collecting cases).

Furthermore, the undersigned clarifies that Mr. Lynch's argument regarding punitive damages fails because Plaintiffs bring no claims under the ADA or the Rehabilitation act against him. (*See* Second Am. Compl. ¶¶ 186-227.) Rather, the sole allegations against Mr. Lynch here are that he is liable under North Carolina state law for three torts: battery, assault, and false imprisonment (*Id.*). *Cf. Tort*, Black's Law Dictionary (12th ed. 2024) ("It might be possible to define a tort by enumerating the things that it is not. It is not crime ….") Though these torts share names with North Carolina state crimes,[6] each tort is a *civil* wrong that requires adjudication separate from his previously adjudicated state *criminal* matter. *Hussey*, 31 N.C. App. at 149.

   c. **This Court Has Supplemental Subject Matter Jurisdiction Over Plaintiffs' State-Law Claims Against Mr. Lynch**

Again, Mr. Lynch contends that the Second Amended Complaint should be dismissed for lack of subject matter jurisdiction. (*See generally* Docket Entry 41; *see also* Docket Entry 44.) Rule 12(b)(1) of the federal rules provides for dismissal where the court lacks jurisdiction over the subject matter of the lawsuit. Should a defendant challenge the existence of federal subject-matter jurisdiction, the plaintiff bears the burden of showing that jurisdiction exists. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A defendant may assert a facial challenge or factual challenge to subject matter jurisdiction. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). "In pursuing a facial challenge, the defendant must show that a complaint fails to allege facts upon which subject-matter jurisdiction can be predicated. In a factual challenge, on the other

---

[6] *State v. Fulcher*, 34 N.C. App. 233, 242, 237 S.E.2d 909, 915 (1977), *affirmed by State v. Fulcher*, 294 N.C. 503, 243 S.E.2d 338 (1978) ("The common-law crime of false imprisonment, a general misdemeanor, has not been superseded by the new kidnapping statute because there may be an unlawful restraint without the purposes specified in the statute."); N.C. Gen. Stat. Ann. § 4-1 (common law declared to be in force); N.C. Gen. Stat. Ann. § 14-33 (criminal misdemeanor assault and battery); N.C. Gen. Stat. Ann. § 14-32.1 (criminal felony assault on individual with disability).

13

hand, the defendant maintains that the jurisdictional allegations of the complaint are not true." *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 892 F.3d 613, 621 n.7 (4th Cir. 2018) (citations omitted). A "court should grant the Rule 12(b)(1) motion to dismiss 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (quoting *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

This Court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Further, "[federal] district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). This jurisdictional grant extends to "claims that involve the joinder … of additional parties[,]" *id.*, provided they form part of the same case or controversy as claims over which the court has original jurisdiction. *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 615 (4th Cir. 2001). State claims are part of the same case or controversy as federal claims when they "derive from a common nucleus of operative fact … such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding." *Axel Johnson, Inc. v. Carroll Carolina Oil Co.*, 145 F.3d 660, 662 (4th Cir. 1998); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725-26 (1966) (noting that "considerations of judicial economy, convenience and fairness to litigants" motivate 28 U.S.C. § 1367 and justify supplemental jurisdiction).

Here, although Mr. Lynch does contest the veracity of Plaintiffs' allegations regarding his interactions with Matthew, he does not argue that the jurisdictional allegations of the complaint

14

are untrue (*see generally* Docket Entries 41, 44); the Court therefore construes his Motion to Dismiss as asserting a facial challenge. Again, Plaintiffs argue that this Court has original jurisdiction over their federal-law claims against the Board pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over their state-law claims against Mr. Lynch pursuant to 28 U.S.C. § 1367(a). (Docket Entry 43 at 3-5.) Mr. Lynch does not attempt to refute said arguments. (*See generally* Docket Entry 44.) Rather, again, Mr. Lynch argues that jurisdiction can be conferred only by 18 U.S.C. § 113, 18 U.S.C. § 111, "and/or" 28 U.S.C. § 1332, and that since none of those three is satisfied, this Court lacks jurisdiction over the state law claims against him. (*See generally* Docket Entries 41, 44.)

The undersigned finds Mr. Lynch's argument unpersuasive. Here, the plain text of 28 U.S.C. § 1331 clearly confers the Court original jurisdiction over Plaintiffs' federal-law claims against the Board brought pursuant to the ADA and the Rehabilitation Act, and for the following reasons the Court also has supplemental jurisdiction over Plaintiffs' state law claims against Mr. Lynch. 28 U.S.C. § 1367(a).

Plaintiffs' state-law claims against Mr. Lynch are closely intertwined with their federal-law claims against the Board. Indeed, Plaintiffs alleged sufficient facts that involved Mr. Lynch in their claims against the Board to permit an inference that Matthew was discriminated against due to his disability in violation of federal law. (*See* Docket Entry 30 at 19.) Said facts include allegations that Matthew was "subject to improper uses of force by untrained and unqualified staff," particularly by Mr. Lynch, whose assignment to Matthew Plaintiffs allege caused Matthew to be subjected to an assault, battery, and false imprisonment. (*See id.*; *see also* Second Am. Compl. ¶¶ 90-111; ¶¶ 186-227.) Furthermore, the Court stated that

15

the Amended Complaint alleges that the Board had knowledge of improper physical force being used against disabled students by untrained and unqualified TAs[, including Mr. Lynch.] … Despite the Board's awareness of the importance of the proper training[,] … [Plaintiffs] allege that the Board ignored Ms. Cobb[']s] requests that properly qualified and trained TAs be hired or be trained before beginning work, and that the Board[ ]knows its practice of employing unqualified and untrained TAs has resulted in and will continue to cause the improper use of physical force against students with intellectual disabilities, including Matthew. … Further, [Plaintiffs] allege that despite the Board's knowledge regarding the TAs, it acted with deliberate indifference as it did nothing to prevent a violation of rights from occurring. (*Id.* ¶¶ 75-78.) Thus, at the pleading stage, the undersigned finds that the Amended Complaint … sufficiently alleges facts[, some of which directly implicate Mr. Lynch, to give] rise to a plausible inference of deliberate indifference [against the Board].

(*See id.* at 23 (some citations omitted); *see also id.* at 19, 21.) Crucially, this Court found that Plaintiffs' allegations regarding the September 16, 2021, incident in which Mr. Lynch allegedly improperly used physical force against Matthew stated a sufficient claim against the Board under the ADA and the Rehabilitation Act. (*See id.*, *see also* Second Am. Compl ¶ 78.) Therefore, at least some of Plaintiffs' federal-law claims against the Board arise from the same common nucleus of operative facts as their state-law claims against Mr. Lynch. *Shaughnessy*, 2018 WL 6047277 at *6 ("The facts underlying [the plaintiff's] state[-]law claims against [one defendant] appear to overlap substantially with his [federal-law claims for] disability discrimination and retaliation against [another defendant]. … Because the state claims against [one defendant] and federal claims against [another defendant] derive from a common nucleus of operative fact, exercise of supplemental jurisdiction is appropriate under § 1367(a)." (citations omitted)); *Sciacca*, 509 F. Supp. 3d at 514 (in action wherein student with IEP was attacked by other students while riding school bus and wherein parents sued county school board and individuals who attacked student, there was sufficient factual nexus between state law claims (including assault and battery) against all defendants and federal law claims (including violations

16

of the ADA and the Rehabilitation Act) against some defendants to exercise supplemental jurisdiction; all claims formed part of the same case or controversy pursuant to § 1367(a)).

Ultimately, therefore, "the Court concludes that the federal and state claims here derive from a common nucleus of operative facts and that it is in the interest of economy, convenience, and fairness for [Plaintiffs'] state and federal claims … to remain in federal court. Accordingly, the Court will exercise supplemental jurisdiction under 28 U.S.C. § 1367 over [Plaintiffs'] state law claims against [Mr. Lynch]." *Lerma v. NTT McKee Retail Ctr., LLC*, No. 5:11-CV-02161-LHK, 2011 WL 4948667, at \*6 (N.D. Cal. Oct. 18, 2011) (unpublished); *Gibbs*, 383 U.S. at 726. Plaintiffs have carried their burden of alleging facts that make it plausible that jurisdiction exists and that Mr. Lynch is not entitled to prevail as a matter of law at this stage. Thus, the undersigned recommends that the Motion to Dismiss (Docket Entry 41) should also be denied.

### III. CONCLUSION

For the reasons stated herein, **IT IS RECOMMENDED** that Defendant Lynch's Motion entitled "Defendant Jeffrey Lee Lynch's Motion to Dismiss Amended Complaint – Federal Rule of Civil Procedure (FRCP) 12(b)(1) – Court's Lack of Subject Matter Jurisdiction" (Docket Entry 38) should be **DENIED as moot**, and that Defendant Lynch's Motion entitled "Defendant Jeffrey Lee Lynch's Motion to Dismiss Second Amended Complaint" (Docket Entry 41) should be **DENIED**.

          /s/ Joe L. Webster
          United States Magistrate Judge

May 8, 2025
Durham, North Carolina